PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRETT M. McCLAFFERTY, | ) | |
| | ) | CASE NO. 5:19CV2219 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| PORTAGE COUNTY BOARD | ) | |
| OF COMMISSIONERS, *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF No. 9] |

Pending is Defendant Correct Care Solutions, LLC's ("CCS") Motion to Dismiss (ECF No. 9) pursuant to Fed. R. Civ. P. 12(b)(6). The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law. For the reasons that follow, the Court grants the motion.

**I. Background**

In September 2019, *Pro Se* Plaintiff Brett M. McClafferty filed an 11-count Complaint (ECF No. 1) against the Portage County Board of Commissioners, David W. Doak, Dale Kelly, Daniel Burns, Bryan Morgenstern, William Burns, Cory Germani, Michael Burda, and Amy Beans ("Portage County Defendants"), Coleman Professional Services, Inc., Brian Welsh, M.D., and CCS. Plaintiff is a state prisoner presently incarcerated at Lake Erie Correctional Institution. His allegations against CCS in the case at bar arise from its involvement in the care and treatment of Plaintiff during his two detentions at the Portage County Jail (the "Jail") while awaiting trial on various financial crimes. ECF No. 1 at PageID #: 7, ¶ 10.

(5:19CV2219)

CCS is a contract provider of medical services at the Jail. ECF No. 1 at PageID #: 9, ¶ 22. Upon his arrival at the Jail on September 25, 2017, Plaintiff alleges that nurses contracted through CCS were informed that he suffered from "severe onset anxiety disorder," and that he was prescribed Alprazolam (Xanax) and Celexa by his primary care physician. ECF No. 1 at PageID #: 7, ¶ 10; PageID #: 11, ¶ 31. Plaintiff asserts that Dr. Welsh, a psychiatrist and director of Coleman Professional Services (not affiliated with CCS), discontinued these prescriptions because they allegedly violated the "narcotic free jail policy." ECF No. 1 at PageID #: 11, ¶ 33. Plaintiff alleges that his blood pressure became unstable, causing him to be transported to a local hospital where he was given Alprazolam. ECF No. 1 at PageID #: 12, ¶ 37. Upon his return to the Jail, Dr. Welsh prescribed a one-week "ween (sic) order" when Plaintiff would be weaned off the Alprazolam. ECF No. 1 at PageID #: 12, ¶ 38.

Plaintiff alleges he complained about Dr. Welsh's wean order to his attorney, who successfully obtained an order from the Portage County, Ohio Court of Common Pleas that Plaintiff be given access to his medication. ECF No. 1 at PageID #: 12-13, ¶¶ 39-42. Plaintiff asserts Dr. Welsh refused to follow the court order, leading to a second order requiring Plaintiff's care at the Jail to be coordinated between Dr. Welsh and Plaintiff's primary care physician. ECF No. 1 at PageID #: 13-14, ¶¶ 43-44. Plaintiff does not allege that any CCS nurse was involved in the medical decisions regarding providing or withholding any of his medications.

Plaintiff alleges that instead of complying with these orders, Dr. Welsh started him on a regimen of Seroquel, Remeron, and Clonidine. ECF No. 1 at PageID #: 14-15, ¶¶ 48-49. Plaintiff allegedly refused to take these medications. ECF No. 1 at PageID #: 15-16, ¶ 55.

(5:19CV2219)

Plaintiff asserts that, as a response to his refusal to take the medication, he was extracted from his cell and subjected to punishment by Officers Burns and Morgenstern, causing Plaintiff physical injury to his hand and arm. ECF No. 1 at PageID #: 16-18, ¶¶ 56-66. Plaintiff does not allege that any CCS nurse played a role in these events.

Plaintiff alleges that, rather than pursue a grievance against the correction officers, he wrote a letter to Sheriff Doak, which then led to a meeting with Comdr. Symsek regarding an investigation that would be conducted into the alleged incident. ECF No. 1 at PageID #: 18-19, ¶¶ 69-70. Over the next few months, Plaintiff asserts that he was harassed by Officer Germani in retaliation for his complaint against Officer Burns. ECF No. 1 at PageID #: 20, ¶¶ 73-75. In March 2018, Plaintiff alleges he was assaulted by Officer Burns a second time. ECF No. 1 at PageID #: 21-22, ¶ 78. Plaintiff declined to make a formal statement against Officer Burns. ECF No. 1 at PageID #: 22, ¶ 80. Thereafter, he asserts Det. Springer, who was charged with investigating Plaintiff's complaints, told him that Springer was having a "hard time" gathering facts related to the incident because he was being "stonewalled" by Officer Burns and jail staff. ECF No. 1 at PageID #: 23, ¶ 82. Plaintiff alleges that several defendants, including CCS, engaged in a "cover up" of the excessive force used against him, which violated his due process rights under the Fourteenth Amendment. ECF No. 1 at PageID #: 33-34, ¶¶ 128-31. On April 18, 2018, Plaintiff was transported to Lorain Correctional Institution to begin serving his sentence. ECF No. 1 at PageID #: 23-24, ¶ 85.

Plaintiff alleges that he was returned to the Jail on or about May 22, 2019. ECF No. 1 at PageID #: 25, ¶ 91. He asserts Dr. Welsh refused to treat him during this period of detention,

(5:19CV2219)

which lasted approximately one week. ECF No. 1 at PageID #: 25-26, ¶¶ 93-95. He does not allege that CCS or any of its nurses played a role in this alleged decision to deny treatment.

Plaintiff asserts three claims that name CCS: (1) a claim under 42 U.S.C. § 1983 related to the alleged "cover up" by Sheriff's Office employees and contractors (Count V); (2) a claim under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd for the alleged refusal to provide him emergency medical care (Count IX); and, (3) a state law claim for intentional infliction of emotional distress ("IIED") (Count X).

## II. Standard of Review

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in th[e] complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal* , 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. It must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial

(5:19CV2219)

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 556.  When a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (brackets omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)).  The Court "need not accept as true a legal conclusion couched as a factual allegation or an unwarranted factual inference." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citations and internal quotation marks omitted).  Pleadings filed by *pro se* litigants are liberally construed. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001).  This lenient treatment, however, has limits, as "courts should not have to guess at the nature of the claim asserted." *Wells*, 891 F.2d at 594.

### III.  Analysis

**A.  Constitutional Claim Under 42 U.S.C. § 1983 (Count V)**

In order to state a plausible claim for relief under § 1983, a complaint must allege "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

5

(5:19CV2219)

A private company, like CCS, that contracts with a county to perform a traditional state function like providing healthcare to inmates can "be sued under § 1983 as one acting 'under color of state law.' " *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins*, 487 U.S. 42, 54 (1988)).  Plaintiff's § 1983 claim against CCS (Count V), however,  is insufficient as he fails to allege the deprivation by CCS of a federal right.

Plaintiff does not specifically identify in the Complaint (ECF No. 1) any particular liberty or property interest he believes was violated.  Instead, Plaintiff alleges in conclusory fashion that several Defendants engaged "in covering up the use of excessive force" by correction officers at the Jail.  ECF No. 1 at PageID #: 33, ¶ 129.[1]  Stated differently, Plaintiff is alleging that Defendants should have investigated his accusations and taken action against the correction officers for their alleged use of excessive force.

"There is no statutory or common law right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007); *see also Seigel v. City of Gernantown*, 25 Fed.Appx. 249, 250 (6th Cir. 2001) ("[A] finding of incompetent or negligent investigation . . . is insufficient to establish a constitutional violation.").  The undersigned has, in a prior ruling, determined that, "Plaintiff  has no constitutional right to investigation and prosecution." *Weaver v. Moamis*, No. 4:14CV0311, 2014 WL 4425742, at *3 (N.D. Ohio Sept. 8, 2014) (Pearson, J.) (citing *Miller v. Dowagiac Police Dept.*, No. 96-2141, 1997 WL 640127, at *3 (6th Cir. Oct. 14, 1997), and *Pusey v. Youngstown*, 11 F.3d 652, 656 (6th Cir. 1993)).

---

[1] "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice [to state a plausible claim for relief]." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citation omitted).

6

(5:19CV2219)

Plaintiff cannot state a plausible § 1983 claim based on a "mere failure to act" or the "mere right to control employees;" instead Plaintiff must allege "active unconstitutional behavior" by CCS in order to prevail. *Rodriguez v. City of Cleveland*, 439 Fed.Appx. 433, 457-58 (6th Cir. 2011) (citations omitted). However, Plaintiff fails to allege any facts that could establish an active constitutional violation by CCS related to a failure to investigate the alleged use of force.

Assuming *arguendo* that Plaintiff had a right to an investigation, he fails to allege any facts referring to CCS's involvement "in covering up the use of excessive force" by correction officers at the Jail. Plaintiff does not allege that CCS has any supervisory authority over the correction officers or that it had any duty to conduct or participate in an investigation into allegations of excessive force. "Plaintiff must state a plausible constitutional violation against each individual defendant – the collective acts of defendants cannot be ascribed to each individual defendant." *Reilly v. Vadlamudi*, 680 F.3d 617, 626 (6th Cir. 2012) (citations omitted). Plaintiff has failed to plead facts to support the conclusion that CCS violated his constitutional rights. This failing requires dismissal.

Finally, the doctrine of respondeat superior does not apply in § 1983 lawsuits to impute liability to supervisory personnel. See *Wingo v. Tenn. Dep't of Corr.*, 499 Fed.Appx. 453, 455 (6th Cir. 2012) (per curiam) (citing *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981)). "In order to find supervisory personnel liable, a plaintiff must allege that the supervisors were somehow personally involved in the unconstitutional activity of a subordinate, or at least acquiesced in the alleged unconstitutional activity of a subordinate." *Id.* (citation omitted). Section 1983 liability must also be based upon active unconstitutional behavior, not upon a mere failure to act. *Bass v.*

7

(5:19CV2219)

*Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (citing *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989)). Accordingly, Plaintiff fails to state a plausible § 1983 claim against CCS upon which relief may be granted, and this claim is dismissed.

### B. Claim Under the Emergency Medical Treatment and Active Labor Act ("EMTALA") (Count IX)

CCS is not subject to liability under EMTALA. Plaintiff argues that the Jail should be treated as a "bonafide (sic) hospital" and that its medical unit is the equivalent of an emergency room. ECF No. 12 at PageID #: 183. To do, however, would be contrary to Congress's intent and the plain language of EMTALA.

"When a patient arrives at a 'hospital that has a hospital emergency department,' EMTALA imposes three requirements upon the hospital: (1) the hospital must provide for an appropriate medical screening examination; (2) the hospital must provide necessary stabilizing treatment for emergency medical conditions; and (3) the hospital may not transfer a patient who is not stabilized (except in certain defined circumstances).' " *Romine v. St. Joseph Health Sys.*, 541 Fed.Appx. 614, 618 (6th Cir. 2013) (citing 42 U.S.C. § 1395dd).

This is not a case about "patient dumping" in which an EMTALA-defined "participating hospital" refuses to treat sick patients or improperly transfers them without stabilization. Instead, Plaintiff alleges that he was not provided with the medication or medical treatment of his choice by the jail medical staff. *See, e.g.*, ECF No. 1 at PageID #: 11-16, ¶¶ 33-55; PageID #: 25-26, ¶¶ 91-95. This situation does not fall under the ambit of EMTALA which "requires hospitals to provide medical screening and stabilizing treatment to individuals seeking emergency care in a nondiscriminatory manner." *Torretti v. Main Line Hospitals, Inc.*, 580 F.3d 168, 173 (3rd Cir.

8

(5:19CV2219)

2009) (footnote omitted). It does not provide a cause of action to a jail inmate who disagrees with the treatment regimen prescribed by the jail medical staff. If Congress had intended for EMTALA to be applicable to jails and their in-house medical providers, it would have stated as much.

Finally, Ohio Rev. Code § 2305.113(A), the statute of limitations, requires a plaintiff alleging medical malpractice to file the claim within one year or provide a letter to the defendant that such a suit will commence within 180 days. To the extent Count IX of the Complaint (ECF No. 1) may be construed as alleging a state law medical malpractice claim against CCS, that claim also cannot survive. Any such claim would be time-barred because it was not brought until more than one year after the end of Plaintiff's first term of incarceration at the Jail. *See* ECF No. 1 at PageID #: 7, ¶ 10; PageID #: 10, ¶ 30; PageID #: 23-24, ¶ 85.

Accordingly, Plaintiff fails to state a plausible EMTALA or medical malpractice claim against CCS upon which relief may be granted, and Count IX against CCS is dismissed.

**C. Claim for Intentional Infliction of Emotional Distress ("IIED") (Count X)**

To establish a claim for IIED under Ohio law, a plaintiff must prove facts showing: (1) the defendant either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions were the proximate cause of the plaintiff's psychic injury; and (4) the mental anguish suffered by the plaintiff was serious. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995) (citing *Hanly v. Riverside Methodist Hosp.*, 78 Ohio App.3d 73, 82 (1991)). Plaintiff has failed to plead facts that could establish a plausible claim

9

(5:19CV2219)

for intentional infliction of emotional distress under Ohio common law. He does not allege how CCS or any of its employees or agents engaged in "extreme or outrageous" conduct which caused a "severe and debilitating" injury. See *Paugh v. Hanks*, 6 Ohio St.3d 72, 78 (1983). Accordingly, Plaintiff fails to state an IIED claim against CCS upon which relief may be granted, and this claim is dismissed.

### IV. Conclusion

Defendant Correct Care Solutions, LLC's ("CCS") Motion to Dismiss (ECF No. 9) is granted.

IT IS SO ORDERED.

| | |
|---|---|
| September 29, 2020 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |