PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRETT M. McCLAFFERTY, | ) | |
| | ) | CASE NO.  5:19CV2219 |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| PORTAGE COUNTY BOARD | ) | **AND ORDER** |
| OF COMMISSIONERS,  *et al.*, | ) | [Resolving ECF Nos. 19, 46, 48, 52, 58, |
| | ) | 60, 66, 69, 71, 75, 78, 90, 99, 102, 105, |
| Defendants. | ) | 108, and 109] |

Pending are:

Defendants Portage County Board of Commissioners, David W. Doak, Dale Kelly, Daniel Burns, Bryan Morgenstern, William Burns, Cory Germani, Michael Burda, and Amy Beans' ("Portage County Defendants") Motion for Partial Judgment on the Pleadings (ECF No. 19);

*Pro Se* Plaintiff  Brett M. McClafferty's Motion for Order to Preserve Evidence (ECF No. 46);

Plaintiff's Emergency Motion to Reconsider; Request for Court to Enter Findings of Fact and Conclusions of Law (ECF No. 48);

Portage County Defendants' Motion to Quash Subpoena to Portage County (ECF No. 52);

Portage County Defendants' Motion to Strike Plaintiff's Request for Reciprocal Discovery (ECF No. 58);

Portage County Defendants' Motion to Compel Plaintiff to Respond to Interrogatories (ECF No. 60);

Defendants Coleman Professional Services, Inc. ("Coleman") and Brian Welsh, M.D.'s ("Dr. Welsh") Motion for Judgment on the Pleadings (ECF No. 66);

(5:19CV2219)

Portage County Defendants' Motions for Protective Order and to Strike (ECF No. 69);

Portage County Defendants' Motion for Order Permitting Lake Erie Correctional Institution ("LaECI") to Release Additional Inmate Phone Calls (ECF No. 71);

Plaintiff's Motion for Leave to File Surreply (ECF No. 75);

Plaintiff's Request for Order Authorizing Clerk to Execute Previously Filed Subpoena and to Effectuate Service (ECF No. 78);

Plaintiff's Motion *in Limine* Requesting That This Court, on Judicial Estoppel Grounds, Prohibit County Defendants From Taking Positions Inconsistent With Video Evidence Provided to the Court by County Defendants (ECF No. 90);

Defendants Germani, Burns and Morganstern's Motion for Protective Order Pertaining to Plaintiff's Requests for Admission (ECF No. 99);

Defendants' Joint Motion for Status Conference (ECF No. 102);

Portage County Defendants' Motion for Sanctions of Dismissal, Attorney Fees and Costs, Injunctive Relief, and to Declare Plaintiff a Vexatious Litigator (ECF No. 105);

Coleman and Dr. Welsh's Motion for Sanctions of Dismissal and Designation of Plaintiff as a Vexatious Litigator (ECF No. 108); and,

Plaintiff's Motion for Enlargement of Time to Conduct Discovery (ECF No. 109).

Because oral argument will not aid the decisional process, these motions will be decided based on the parties' briefing.

## I.

## A.

*Pro Se* Plaintiff  Brett M. McClafferty (#A750839) was formerly incarcerated at the Portage County Jail and the LaECI.[1]  Plaintiff filed a request for permission to proceed *in forma*

---

[1] *See* Ohio Department of Rehabilitation and Correction ("ODRC") Offender Detail (ECF No. 105-1).  On January 11, 2021, Plaintiff filed a Notice of Change of

(continued...)

(5:19CV2219)

*pauperis* (ECF No. 2) when he filed the above-entitled 11-count prisoner civil rights case on

September 20, 2019.[2]  ECF No. 2 states, in pertinent part, as follows:

> I, BRETT M. McCLAFFERTY, swear or affirm under penalty of perjury that I am
> the petitioner/plaintiff/movant in the above-named proceeding, that I am unable to
> pay the costs of these proceedings, and that I believe I am entitled to the relief
> sought in the complaint/petition/motion.  I further swear or affirm under penalty
> of perjury under United States laws that my answers on this form and any
> attachments are true and correct.

ECF No. 2 at PageID #: 81.  On January 31, 2020, the Court granted ECF No. 2 and ordered

Plaintiff to pay the $350 filing fee under a payment plan.  *See* Order (ECF No. 6).  The Court

ordered the prison cashier's office to deduct an initial payment of $55.24 from Plaintiff's

prisoner account and thereafter "to make deductions from Plaintiff's prisoner account . . . until

the filing fee in the amount of $350.00 is paid."  ECF No. 6.

The Complaint (ECF No. 1) in this prisoner civil rights action under 42 U.S.C. § 1983

against 12 Defendants alleges that Plaintiff's constitutional rights were violated during two

instances of excessive force when he was a pretrial detainee at the Portage County Jail.  He

asserts Portage County Sheriff's Deputies beat and tortured him on October 20, 2017 and used

---

[1](...continued)
Address (ECF No. 112) due to his being released from state custody on January 5, 2021.
*See State v. McClafferty*, Nos. 29728, 29733, 2020 WL 7682264 (Ohio App. 9th Dist.
Dec. 23, 2020) (vacating judgments of the Summit County, Ohio Court of Common
Pleas) (ECF No. 109-3 at PageID #: 1673-76); ECF No. 109-3 at PageID #: 1670.

[2]  In accordance with the prison mailbox rule, the Court will treat the Complaint
(ECF No. 1) as if filed on September 20, 2019, the date printed on the pleading.  *See* ECF
No. 1 at PageID #: 40.  The Sixth Circuit has applied the prison mailbox rule in the
context of *pro se* prisoner cases.  *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008)
(citing *Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002) (per curiam) (extending
*Houston v. Lack*, 487 U.S. 266 (1988))) (Under the prison mailbox rule, "a pro se
prisoner's complaint is deemed filed when it is handed over to prison officials for mailing
to the court.").

(5:19CV2219)

excessive force during his March 29, 2018 escort to administrative lockdown.  Plaintiff alleges

that on October 20, 2017, corrections officers beat him and dragged him handcuffed down a

hallway, hyperextending both shoulders and dislocating his left shoulder.  ECF No. 1 at PageID

#: 16, ¶¶ 57-58.  McClafferty claims that he was dumped naked in a 50-degree room and left with

no clothing or blankets for almost seven (7) hours.  ECF No. 1 at PageID #: 17, ¶¶ 59-61.

Plaintiff asserts he was pepper-sprayed twice before he was finally transported by deputies to a

local hospital's emergency room.  ECF No. 1 at PageID #: 17, ¶ 62.  McClafferty alleges he had

little sensation in his left hand when he arrived at the hospital, and that his arm was purple from

lack of circulation.  ECF No. 1 at PageID #:18, ¶ 66.  Furthermore, Plaintiff claims a

conversation occurred between "[a] visibly upset emergency room physician" and the "unknown

transporting deputy" about McClafferty's poor condition.  ECF No. 1 at PageID #:18, ¶ 66.

Plaintiff contends his shoulder injury was exacerbated during an excessively forceful

escort to a maximum security cell on March 29, 2018.  Paragraph 78 of the Complaint contains

allegations regarding the March 29, 2018 escort:

> Defendant William Burns and Deputy Holbrook performed a cell extraction,
> where Deputy Holbrook calmly asked McClafferty to place his hands on the wall.
> McClafferty complied, and Defendant William Burns aggressively placed
> McClafferty in handcuffs.  Defendant William Burns addressed McClafferty
> angrily stating, "you think you can get me fired, snitch?  I've been waiting for this
> opportunity you fucking piece of shit!"  Defendant William Burns began to assault
> McClafferty from behind, *shoving him violently* towards the exit of the housing
> unit.  When the officers and McClafferty reached the hallway, McClafferty
> spotted Defendant Morgenstern and told Morgenstern that he had a "keep separate
> order" with Defendant William Burns.  Defendant Morgenstern replied, "who the
> fuck do you think you are to tell me my job?"  Defendant William Burns then
> *purposely stepped on one of McClafferty's jail-issued sandals* which made
> McClafferty stumble.  Defendant William Burns began to scream repeatedly,
> "stop resisting!" while *yanking* McClafferty's handcuffed hands higher and higher
> up his back, once again hyperextending McClafferty's already injured shoulder.

(5:19CV2219)

> Deputy Holbrook told Defendant William Burns to "chill out" and stated that McClafferty was not resisting, to which Defendant William Burns responded with, "fuck off!"

ECF No. 1 at PageID #: 21-22 (emphasis added).

The Complaint (ECF No. 1) contains 11 counts.  Coleman and Dr. Welsh are only named in Counts V, IX, and X.  Plaintiff alleges he was attacked, suffered a dislocated shoulder, and was tortured by jail staff after refusing to ingest medications wrongfully prescribed by Dr. Welsh, a contracted jail psychiatrist, and administered by the contracted jail nursing staff.  According to Plaintiff, he was also denied access to his state court ordered medications prescribed by Plaintiff's primary care physician.  Plaintiff also complains that jail staff were deliberately indifferent to his medical needs; that he was denied access to an attorney; that Defendants conspired to cover up the use of excessive force and torture; that the Portage County Board of Commissioners had an official policy to cover up excessive force and torture; that Defendants engaged in racketeering activity, and that Defendants conspired to engage in racketeering activity.  Plaintiff also alleges state law claims against Defendants for intentional infliction of emotional distress ("IIED") and statutory indemnification (*i.e.*, demanding that the Board of Commissioners pay Plaintiff for any tort judgments rendered against Portage County employees).

The day after Plaintiff was allegedly mistreated during his escort to administrative lockdown, Judge Becky L. Doherty of the Portage County, Ohio Court of Common Pleas sentenced Plaintiff to consecutive 1-year terms of imprisonment for two counts of forgery – the maximum penalty available.  *See* Order and Journal Entry for March 30, 2018 Sentencing (ECF No. 105-4).  On April 6, 2018, Plaintiff wrote a letter to Judge Doherty in which he referred to himself as a "political prisoner," described the sentence as "shameful," "mean-spirited,"and

(5:19CV2219)

"ludicrous," and declared "the imposition of such an outrageous sentence is political in nature."

ECF No. 105-5 (underlining in original).

On or before July 22, 2019, Plaintiff wrote to his criminal defense attorney, Sean C.

Buchanan, and proposed filing a civil lawsuit against Coleman and Dr. Welsh and a few of the

Portage County Defendants.  *See* ECF No. 105-8 at PageID #: 1450-56.  In that letter, Plaintiff

recounted the same allegations of medical malpractice that he makes in the Complaint (ECF No.

1) and alleged – for the first time – that Corrections Officer Daniel Burns and Corporal Bryan

Morgenstern tortured him on October 20, 2017.  ECF No. 105-8 at PageID #: 1452.  Notably,

there was no mention in the letter of the more recent alleged incident of excessive force during

his March 29, 2018 escort to administrative lockdown, even though Plaintiff declared "[t]hese

facts are completely true and there are no omissions."  ECF No. 105-8 at PageID #: 1453.[3]

Moreover, Plaintiff twice identified University Hospitals ("UH") as the place he was treated after

the "torture" on October 20, 2017.  ECF No. 105-8 at PageID #: 1452.  "Plaintiff DOES believe

that he was taken to University Hospitals Portage Medical Center (as this would make the most

logistical sense given its proximity to the jail). . . ."  ECF No. 64 at PageID #: 885.  UH Portage

Medical Center, however, has no record of treating Plaintiff on October 20, 2017 or the next day.

*See* ECF No. 70-1.

---

[3]  Plaintiff wrote Attorney Buchanan that, "From that point forward [three days after October 20, 2017], I just took the medication they gave me and tried to 'fly below their radar' out of fear of retaliation and further mistreatment."  ECF No. 105-8 at PageID #: 1453  In the Complaint, however, Plaintiff alleges that his continued refusal of medications is what prompted the second alleged incident of excessive force. *See* ECF No. 1 at PageID #: 21, ¶ 76 ("On the evening of March 29th, 2018 McClafferty once again refused the substitute prescription medications ordered by Dr. Welsh.").

(5:19CV2219)

About this same time, Plaintiff told his mother about a lawsuit he was planning, which he described as a medical malpractice action against the doctors who treated him during his detentions at the Portage County Jail.  *See* ECF No. 105-2 at PageID #: 1421 (*196-551 at 6:15; *183-54 at 4:30 – "You're not gonna fuck my medication up for a year and think I'm not gonna get my get-backs.").[4]  In a telephone call from prison in early September 2019, Plaintiff questioned whether he could bring a federal claim for medical malpractice.  He decided that he had to append the malpractice claim to a federal cause of action.  ECF No. 105-2 at PageID #: 1421 (*184-166 at 2:00).  Shortly thereafter, Plaintiff started describing a much different lawsuit than previously contemplated.  ECF No. 105-2 at PageID #: 1421 (*163-911 at 7:56 – "I'm gonna drop the atomic bomb on them."; *163-911 at 8:50 – "I've got 15 defendants on this thing.  You're gonna love this so much you're gonna jiz yourself.  I'm burning the whole fucking establishment down with me, jack.").  Dylan Briscar (aka "G" or "G Black"), Plaintiff's former cellmate, expressed surprise.  ECF No. 105-2 at PageID #: 1421 (*163-911 at 9:00 – "But you said it wasn't going to be that big.  It was just gonna be something, like, minor?).

The Complaint (ECF No. 1) was received for filing on September 25, 2019.  The next day, Plaintiff sent a JPay communication[5] to Briscar announcing:  "We're in business.  Check

_____

[4]  Portage County Defendants manually filed a flash drive containing LaECI prison recordings.  *See* ECF No. 106 at PageID #: 1562.  Plaintiff's jailhouse-initiated, tape-recorded telephone conversations with his family and friends while he was in LaECI and the Portage County Jail constitute admissions by a party-opponent.  *See, e.g. Davis v. Director, TDCJ-CID*, No. NO. 9:14-CV-2, 2019 WL 908250, at *4 (E.D.Tex. Jan. 18, 2019).

[5]  "JPay" is a device similar to an iPad, but without internet access.  Inmates can rent games and music from the institution that they can download to the device.  JPay can also be used to send email and videos, but the content is monitored and screened before it

(continued...)

(5:19CV2219)

your dbriscar@lobbyist.com email.  I had you copied on the press release.  Copy of the federal

complaint is attached."  ECF No. 105-2 at PageID #: 1422.[6]

Next, Plaintiff began soliciting complaints of abuse and mistreatment from former

detainees of the Portage County Jail, many of whom were imprisoned with him at the LaECI.

ECF No. 105-2 at PageID #: 1421 (*174-255 at 4:15 – "I've been running around fucking . . .

inmates . . . fucking getting affidavits fucking signed, notarized . . . you have no idea what I

accomplished today.").[7]  Among the first inmates solicited was Larry Tawney.  At least 23

inmate complaints followed.[8]  Plaintiff was involved, directly or indirectly, with most of them.

---

[5](...continued)
is sent out of the institution.  *State v. Elmore*, No. 16CA52, 2017 WL 1450620, at *5 n. 11 (Ohio App. 5th Dist. April 19, 2017).

[6]  Portage County Defendants manually filed a flash drive containing LaECI Jpay communications.  *See* ECF No. 106 at PageID #: 1563.

[7]  ECF No. 71-2 is an email message from the ODRC identifying "Boog" as Kirk Scott, Jr. (#A601925).  In a recorded call to "Boog", Plaintiff's former bunkmate, Plaintiff later complained that the prison librarian had written him up for allegedly forging a document.  He said, "I know this lady's pissed off . . . because she was the notary on every single one of those [inmate] complaints, right?  So when the FBI was in, right, she got fucking drilled by the FBI over the affidavits because she was the notary on each one of them. . . ."  "I will sue that bitch.  I don't care if I win or lose the lawsuit, I said, I'm gonna do it just to fucking make her life miserable.  I will drag her in and out of court for the next three years. . . ."  "I will make sure that bitch spends $20,000 on attorneys dude. . . I'll take her fucking house."  "I'm gonna destroy this broad when I get out."  "I swear to God I'm going to make her spend $20,000 to defend this lawsuit just because I want her to think of me every time she has to write a check to her attorney, dude."  "They don't know who they're playing with dude."  "The last fucking jail . . . it's all over the fucking news right now being investigated by the FBI, okay?  So listen, Daddy knows what he's doing, ok?  That was the last jail that fucked with me."  ECF No. 105-2 at PageID #: 1421 (*163-173 at 9:00-end).

[8]  After an independent investigation by the Portage County Sheriff's Office, the Lake County Sheriff's Office, and the FBI, all but one complaint was "found to be wholly

(continued...)

(5:19CV2219)

*See, e.g.*, ECF No. 105-2 at PageID #: 1422 (10/13/2019 Jpay communication from Plaintiff to Briscar sending text of affidavit for Austin Frederick; 10/21/2019 Jpay message from Plaintiff to Briscar sending affidavit for execution by "Kenzie"; 10/25/2019 Jpay communication from Plaintiff to Briscar telling him to email a copy of Christopher Brock's affidavit to the media; 10/27/2019 Jpay message from Plaintiff to Briscar instructing him to "use the special gmail" to notify the media that 10 inmate complaints have been sent to the Portage County Commissioners); ECF No. 105-2 at PageID #: 1421 (*167-573 at 3:17 – telling Frederick "Listen, it's gonna be a bombshell weekend on my end, I've gotta bunch of new complaints coming forward"; at 4:52 – "[the Portage County Sheriff's Office] isn't the CIA bro, they probably don't have everything figured out, you know what I mean?"; and, at 6:12 – "Let Amanda know that on Monday there's gonna be three new complaints."; *165-468 at 2:00 – Telling Frederick "There's been 10 complaints filed now with the Board of Commissioners. . . ." and at 4:30 – "I'm aware of seven.  There's seven [inmates] that I have control of.  There's three I don't know who they are, where they're coming from.").  Plaintiff was involved in preparing eight (8) of the complaints.  *See* ECF No. 52-1 at ¶ 3; *see also* ECF 41 at PageID #: 671-72.

Plaintiff had Briscar set up various email identities to deliver McClafferty's desired communications to the media and Portage County officials as though they were coming from

---

[8](...continued)
fabricated or greatly exaggerated accounts of minor or unrelated incidents."  In the sole incident found to have any merit, which occurred in November 2013, the corrections officer involved resigned rather than face disciplinary action by the Sheriff.  *See* July 5, 2020 Press Release (ECF No. 55-1 at Page ID #: 796); Affidavit of Captain Ronald Walters (ECF No. 52-1).  No charges were filed against any of the Portage County corrections officials, but charges are still being considered against the inmates who made the complaints.  *See* ECF No. 105 at PageID #: 1392 n. 5.

(5:19CV2219)

concerned third parties.  Plaintiff instructed Briscar to create several email identities, including

among others:  Portage.Whistleblower@gmail.com (ECF No. 105-2 at PageID #: 1421 (*178-39

at 8:50); ECF No. 105-2 at PageID #: 1422 (9/29/2019 Jpay communication from Plaintiff to

Briscar)), dbriscar@lobbyist.com (ECF No. 105-2 at PageID #: 1422 (9/26/2019 Jpay message

from Plaintiff to Briscar)), ryoungblood@lobbyist.com (ECF No. 105-2 at PageID #: 1421

(*169-670 at 3:00);[9] ECF No. 105-2 at PageID #: 1422 (11/30/2019 JPay communication from

Plaintiff to Briscar)); and, borodawgz@mail.com (ECF No. 105-2 at PageID #: 1422 (11/23/2019

and 11/24/2019 Jpay messages).  Briscar used these accounts to send innumerable scripted email

messages to the media and Portage County officials, as Plaintiff directed.

### B.

In October 2019, Plaintiff sent Briscar a communication from prison and dictated the

contents of an email he wanted Briscar to send to a television news reporter in Cleveland to

corroborate McClafferty's story of abuse.  ECF No. 105-2 at PageID #: 1422 (10/2/2019 Jpay

message) (ECF No. 67-2).  Briscar had several recorded phone conversations with Plaintiff in

which McClafferty told him to call all the news stations, tell them that Plaintiff's story is 100%

---

[9]  Plaintiff provided the Court with a copy of a Change.org petition (ECF No. 35-1
at PageID #: 571-89) and asked the Court to take judicial notice of it.  The originator of
the petition – and the very first "person" to "sign" it – is "Rick Youngblood."  According
to the Portage County Defendants, Plaintiff authored and had Briscar post the petition
under this false identity created by Briscar at Plaintiff's instruction.  *See* ECF No. 105-2
at PageID #: 1421 (*172-13 at 3:00-end); Excerpts from Excel Spreadsheets from LaECI
(ECF No. 67-1) at PageID #: 943, 951, and 953; ECF No. 105-2 at PageID #: 1422
(12/8/2019 Jpay communication from Plaintiff to Briscar with text of petition
representing that "the public" demands an investigation by BCI.).  The same false identity
was used to press the television news reporter in Cleveland to "plug the petition" on the
station's website.  ECF No. 105-2 at PageID #: 1422 (12/10/2019 Jpay message to
Briscar).

(5:19CV2219)

true and "raise all kinds of hell."  McClafferty cautioned Briscar in the first call about the same

topic, that he should not give the impression that he and Plaintiff are "super tight or anything."

Plaintiff told Briscar he was giving him "the green light to have fun with it, but just, you know,

keep it smart."  "Don't make it like, obviously I'm telling you to call these places and blow them

up."  ECF No. 105-2 at PageID #: 1421 (*166-893 at 12:30).   Plaintiff suggested that Briscar tell

the media that they "have no idea how bad it is in there, they're beating the shit out of people."

ECF No. 105-2 at PageID #: 1421 (*166-893 at 13:15).  Plaintiff told Briscar to "make a big

scene bro, the more drama the bigger the story."  ECF No. 105-2 at PageID #: 1421 (*166-893 at

13:30).  Briscar asked whether he should tell the media that he witnessed Plaintiff's allegations

because "they're gonna show records I wasn't there [in jail] for some of this shit."  ECF No. 105-

2 at PageID #: 1421 (*166-893 at 14:50).  Briscar even asked Plaintiff when his alleged beating

happened.  ECF No. 105-2 at PageID #: 1421 (*166-893 at 14:55).[10]  The two of them laughed

about creating a dramatic story for Briscar to tell.  Plaintiff concluded the conversation by urging,

"It has to be bigger than just me, bro."  "You gotta make it like a crisis, man."  "Keep plugging

the lawsuit."  "You can't be like I'm putting you up to the call."  ECF No. 105-2 at PageID #:

1421 (*166-893 at 15:30).

    Plaintiff called Briscar a second time "just to recap."  ECF No. 105-2 at PageID #: 1421

(*169-30 at 1:50).  Plaintiff suggested that Briscar tell the media that he "read about it [the

lawsuit] in the paper, you know, you realized that you have inside information about it, right,

because you were my bunkie."  Plaintiff urged Briscar "you know how to play it, right, like

you're basically blowing the whistle on it, you know what I mean?"  "This is the kind of stuff

---

[10]  Plaintiff identified Briscar as a witness in his interrogatory responses.

(5:19CV2219)

that makes good media."  Plaintiff assured Briscar that he had sent him a Jpay communication with all of the newsroom telephone numbers.  ECF No. 105-2 at PageID #: 1421 (*169-30 at 4:00).  When Briscar complained that Plaintiff did not send him a script, McClafferty answered, "I don't want you to sound scripted."  ECF No. 105-2 at PageID #: 1421 (*169-30 at 4:20).  Plaintiff told Briscar to act like "it's been bothering you for fucking two years, but finally, you know, seeing that I filed a lawsuit, you know, made you feel like you had to do the right thing."  "You know how to play it, man."  "You're a very manipulative human being, use your manipulation skills."  ECF No. 105-2 at PageID #: 1421 (*169-30 at 4:30-end).

        In a third call about the same topic, Plaintiff tried to motivate Briscar by telling him that this was his "opportunity to get even" with Portage County for not letting him speak his piece at his own sentencing.  ECF No. 105-2 at PageID #: 1421 (*187-16 at 10:20).  In a fourth call, Plaintiff told Briscar that he had his friend, Ghailib Ali, call reporters at two news stations and identify Briscar as a "corroborating witness" to McClafferty's allegations.  ECF No. 105-2 at PageID #: 1421 (*167-559 at 1:25).  Plaintiff pushed Briscar to call a Cleveland television station while he was on the line.  ECF No. 105-2 at PageID #: 1421 (*167-559 at 6:30).  Briscar did as instructed, but Plaintiff was unhappy with the message Briscar left and told him to call back and make sure someone at the Cleveland television station understood Briscar was a witness.  ECF No. 105-2 at PageID #: 1421 (*167-559 at 9:00).

        In a fifth call, Plaintiff reassured Briscar that there was no way for Portage County to disprove anything Briscar might tell the media because the jail had no surviving video.  ECF No. 105-2 at PageID #: 1421 (*171-909 at 5:10 – "Bro, listen, it was me and you in that cell, pal. You understand?  Ok?  That's it.").  He added, "You take care of me, I'll take care of you, bro."

(5:19CV2219)

ECF No. 105-2 at PageID #: 1421 (*171-909 at 6:10-end).  Finally, Briscar relented.  On October

4, 2019, Briscar gave an "anonymous" on-camera interview to the television news reporter in

Cleveland.

Every day, often several times a day, McClafferty called Briscar and other friends and

dictated text messages, emails and phone calls for them to send or make on his behalf.  ECF No.

105-2 at PageID #: 1422 (10/5/2019 through 12/29/2019 Jpay communications); *also see, e.g.*,

ECF No. 105-2 at PageID #: 1421 (*179-410 at 2:30-7:30; *173-971 at 3:30-9:10; *178-456 at

1:30-4:30).  Plaintiff called and messaged Briscar and other friends daily, asking them to check

media outlets to see who was covering his story.  *See, e.g.*, ECF No. 105-2 at PageID #: 1421

(*12-166-474 at 5:20-end; *70-82 at 11:40).  Plaintiff  had friends watch online videos of his

story while he listened to their reactions.  *See, e.g.*, ECF No. 105-2 at PageID #: 1421 (*178-456

at 4:30-8:10).  Plaintiff insisted that his friends read him the articles and the comments.  *See, e.g.*,

ECF No. 105-2 at PageID #: 1421 (*178-456 at 13:25; *167-14 at 1:40-2:00; *70-82 at 11:40;

*171-288 at 12:45).[11]

## C.

## 1.

On Saturday, October 5, 2019, Plaintiff sent a message to Briscar telling him to email the

television news reporter in Cleveland from Portage.Whistleblower@gmail.com.  The content of

the email was to read:  "A very serious whistleblower complaint has been made against the

portage sheriff by one of his employees.  Expect a redacted copy in your inbox by Monday

---

[11]  Plaintiff's mother told him during a phone call, "I don't want you calling
newspapers.  That's part of that addiction. . . ."  Plaintiff assured his mother he was not.
ECF No. 105-2 at PageID #: 1421 (*204-551 at 13:50-end).

(5:19CV2219)

afternoon." ECF No. 105-2 at PageID #: 1422 (10/5/2019 Jpay communication).  On Monday,

October 7, 2019, at 7:55 a.m., Plaintiff sent Briscar a Jpay message telling him that his "attorney"

had "obtained a redacted version of a whistleblower complaint against Sheriff Doak.  I am having

him email a copy of the complaint to [Plaintiff's case worker] Conley this morning.  In turn, I am

going to have Conley send the file to your dbriscar@lobbyist.com email."  Plaintiff instructed

Briscar to forward the complaint to the FBI and various media outlets from

Portage.Whistleblower@gmail.com.  ECF No. 105-2 at PageID #: 1422 (10/7/2019 Jpay

communication).

        Plaintiff provided the Court with a copy of the redacted version of the "anonymous"

confidential complaint, dated October 3, 2019, alleging a misuse of public funds and asked the

Court to take judicial notice of it.  See ECF No. 35-1 at PageID #: 448-51.[12]  The author of the

complaint expresses dissatisfaction with the same "secret indictment" that Plaintiff criticized in

his Statement on Global Resolution (ECF No. 105-7) and even mentions the case at bar.  But,

Plaintiff denies that he wrote the "anonymous" complaint.  See ECF No. 107 at PageID #: 1570.

According to the Portage County Defendants, the fact that Plaintiff knew about the "anonymous"

whistleblower complaint to the Office of the Ohio Inspector General ("OIG") and Ohio Auditor

of State by October 5, 2019 is "remarkable," given that the complaint is dated October 3, 2019.

Portage County Defendants contend it is "[e]ven more remarkable" that Plaintiff's "attorney" had

---

[12] ECF No. 105-15 at PageID #: 1483-86 is a legible unredacted copy.

(5:19CV2219)

obtained a redacted version of the complaint before the recipients received it.  ECF No. 105 at PageID #: 1396.[13]  Portage County Defendants contend Plaintiff had his case manager email the document to Briscar because the "anonymous" complaint originated with McClafferty – Plaintiff simply wanted Briscar (and everyone else) to believe it was authentic.

**2.**

On November 4, 2019, Plaintiff helped fellow inmate, Larry Tawney, file a charge of abuse with the Ohio Civil Rights Commission ("OCRC") into which McClafferty incorporated the allegations of the "anonymous" complaint to the OIG.  ECF No. 105-2 at PageID #: 1421 (*176-354 at 9:25 – telling Austin Frederick "I helped fucking Tawney draft that goddamn complaint to the Ohio Civil Rights Commission."); (*180-130 at 11:08 – telling Frederick that "tomorrow morning, Tawney is gonna get the charging documents notarized and then he's gonna submit it to the Ohio Civil Rights Commission.  Fuck, I can read it to you.  I've got a copy of it. . . ."); (*152- 2 at 9:40-10:30 – speaking to Tawney's sister, Amanda Griffiths, Plaintiff asks, "Did [Tawney] explain to you that we're . . . what he's doing tomorrow with the Ohio Ethics Commission (sic)?  "Yeah, he's filing a charge, a civil rights charge, he's actually pressing a charge with the Ohio Civil Rights Commission against the county . . . against the Portage County Sheriff's Office.").

In Tawney's charge, Plaintiff ghost wrote:  ". . . On Friday, November 1, 2019, the Sherriffs (sic) office provided a member [of the local media] (Record-Courier) with a phony

---

[13]  The recipients did not receive the complaint until October 17, 2019, at the earliest.  The signature is an illegible swirl and the referenced "Affidavit of Identity" was not attached.  *See* Email Correspondence With OIG (ECF No. 105-15) at PageID #: 1479; *see also* Excerpts From 2019 Fraud Log Report of the Ohio Auditor of State (ECF No. 105-16).

(5:19CV2219)

date-swapped copy of video from a previous period of detention in the jail, and passed this video

off as being the authentic video of my most recent detention in which I was attacked. . . .

Fortunately, over the past weekend, a whistleblower from within the Sherriffs (sic) Office

contacted my family and informed them that video surveillance footage was being manipulated

by jail administrators. . . ."  Tawney OCRC Charge (ECF No. 105-9).

Plaintiff later declared to Frederick that he made up Tawney's allegation about date-

swapping.

> I'm gonna be honest bro, I'm gonna be 100% honest with you.  Is that, I
> questioned, I've been questioning the validity of Tawney's claims for a little
> while, right?  But I got ahead of the last issue when, when . . . when . . . when
> Eileen [McClory from the Record Courier] tells her [Tawney's sister, Amanda
> Griffiths] she saw the video and there's nothing on it, you know, I got ahead of
> that with that, Ohio Civil Rights Commission complaint where he's alleging that,
> you know, it was date swapped . . . because that was what needed to be done
> politically.  But it still may, I will tell you, that it made me question the validity of
> his, of his complaint. . . .

ECF No. 105-2 at PageID #: 1421 (*160-972 at 8:05-8:40.)  Plaintiff then took control of

Tawney's false narrative in the media.  ECF No. 105-2 at PageID #: 1422 (11/5/2019, 11/8/2019

and 11/13/2019 Jpay communications from McClafferty to Briscar).

**3.**

On or about November 6, 2019, Plaintiff called Frederick again to tell him he had

"something very big up my sleeves" that will be "more than a front page."  ECF No. 105-2 at

PageID #: 1421 (*207-812 at 2:45).  Plaintiff told Frederick that he was going to file a petition

for a writ of mandamus to force the Portage County Sheriff's Office to hand over its investigation

of inmate complaints to the Ohio Bureau of Criminal Investigation ("BCI").  Plaintiff said,

"Because I'm locked up, you're gonna have to be the face of it."  Plaintiff told Frederick that he

(5:19CV2219)

researched it thoroughly and would finish drafting it shortly.  He described the petition as "great

work," "a masterpiece," and lauded himself as "a magician with words."  ECF No. 105-2 at

PageID #: 1421 (*207-812 at 7:00- 8:25).  Plaintiff stated he would send Frederick detailed

instructions about what to do and how to file it *in forma pauperis*.  ECF No. 105-2 at PageID #:

1421 (*207-812 at 12:58).[14]  Plaintiff explained, "if you can do all that tomorrow, we can file it

Friday morning, I can issue a press release by noon and it'll be front page above the fold on

Saturday, you know what I mean?"  ECF No. 105-2 at PageID #: 1421 (*207-812 at 10:56).

Somehow, Plaintiff managed to send Frederick the petition and the instructions.[15]  ECF No. 105-

2 at PageID #: 1421 (*191-737 at 1:40-end).  Plaintiff laughed that the Portage County Sheriff's

---

[14]  Frederick's Motion to Waive Fees and Costs was denied.  *Frederick v. Doak,
No. 2019CV00917 (Portage Cty. Common Pleas Ct. Dec. 17, 2019)*.  On April 28, 2020,
collection of the past due filing fees in the amount of $318.10 was referred to a
third-party collection agent.

[15]  Portage County Defendants do not know exactly how Plaintiff sent the draft of
the petition and other items to Frederick, *see* ECF No. 105 at PageID #: 1398 n. 8, but the
petition was filed in error with the Eleventh District Court of Appeals of Ohio on
November 8, 2019 and then refiled with the Portage County, Ohio Court of Common
Pleas on November 21, 2019.  *See* Docket Sheets (ECF No. 105-10).  The Portage County
Defendants point to evidence suggesting that Plaintiff used his case managers to send
these items and/or that he may have hacked his own Jpay tablet to access the internet.  *See*
ECF No. 105-2 at PageID #: 1421 (*155-290 at 15:00 – telling Briscar, "They don't have
a problem logging in and shooting off an email for me but god forbid they should set up
the account, you know what I mean?  As if the former is a less fire-able offense than the
fucking latter. . . ."); (*158-609 at 1:30-2:00 – when Austin Frederick expresses surprise
that Plaintiff's case manager would check the number of signers on the Change.org
petition Briscar created using the fake "Rick Youngblood" account, McClafferty replies,
"You'd be shocked if you knew what they do for me here."); (*178-576 at 1:55 – telling
Ghailib Ali, "You would be shocked if you knew how many strings I pull from inside this
prison on the outside."); (*167-96 at 12:30-13:00 – telling Grant Wilcox to ask himself
how Plaintiff "can get such a document at 5:00 pm on a Sunday when the library is
closed?  Just ask yourself that question."  Wilcox guesses that Plaintiff has "supersecret
access" from his tablet.  Plaintiff says he "look[s] forward to having a conversation with
you the next time you come visit, ok?").

(5:19CV2219)

Office would moan behind closed doors, "Fucking McClafferty just fucking checkmated us!"
ECF No. 105-2 at PageID #: 1421 (*165-628 at 12:32).  Plaintiff and Frederick agreed they
would not tell anyone except Briscar that McClafferty was behind the mandamus action.  ECF
No. 105-2 at PageID #: 1421 (*70-799 at 2:24-3:00).

Around this same time, the Portage County Sheriff's Office was in contact with the
Buckeye State Sheriffs' Association, asking for their help in identifying a neutral third-party to
assume the investigation into the inmates' complaints of abuse.  In late-November or
early-December 2019, the Lake County Sheriff's Office assumed the investigation, assisted by
the FBI.  On November 25, 2019, Plaintiff submitted a petition to the Ohio Attorney General,
signed by most of the complainants, asking for BCI to open a file.  Plaintiff declared that none of
the complainants would participate in the Lake County Sheriff's Office investigation.  *See* ECF
No. 105-11 at PageID #: 1461 ("we will not cooperate in any way with what we perceive to be a
sham process").

Realizing that the mandamus petition was now moot, Frederick filed a Notice of
Dismissal Pursuant to Civ. R. 41(A), which the court approved.  *See Frederick v. Doak*, No.
2019CV00917 (Portage Cty. Common Pleas Ct. Dec. 6, 2019).  Plaintiff came up with another
idea to pursue his agenda against Portage County.

**4.**

Plaintiff used Frederick and Larry Tawney's sister, Amanda Griffiths, to file a taxpayer
action against the Portage County Board of Commissioners and the Portage County Sheriff,
David W. Doak.  Plaintiff called Frederick just after Thanksgiving 2019 and told him, "We're
gonna pivot.  I talked to the lawyers.  You and Amanda . . . You remember I was talking to you

(5:19CV2219)

about a taxpayer lawsuit?"  "Ok, here's what we're gonna do.  We're going to . . . we're going to

voluntarily dismiss the writ, the petition for a writ of mandamus that you filed 'cause it's moot,

ok?  We're gonna do that, we'll do that Monday or Tuesday, ok?  And then you and Amanda on

Thursday are going to file an action, right, that I got my attorneys preparing right now.  It's an

actual . . . actual taxpayer lawsuit under Revised Code Section 309.12 and 309.13. . . ."[16]  ECF

No. 105-2 at PageID #: 1421 (*161-29 starting at 2:00).  Plaintiff complained that it would take

him 12 hours to get the pleading ready, but to him, "This is like a chess match, right?  And the

mandamus was a pretty powerful use of a knight, you know?  But now we gotta make some more

aggressive moves because they countered it. . . ."  ECF No. 105-2 at PageID #: 1421 (*173-31 at

9:10- 9:51).  Plaintiff warned Frederick and Griffiths that if they were asked, they should say that

Frederick drafted the complaint and that McClafferty had nothing to do with it.  ECF No. 105-2

at PageID #: 1421 (*167- 884 at 2:10; *195-765 at 10:40).  Frederick filed the taxpayer action as

---

[16]  Depending on his audience, and whether it serves his purpose, Plaintiff
alternately presents himself to others as a lawyer, a law school graduate, or a college
graduate.  *Compare* ECF No. 105-2 at PageID #: 1421 (*177-489 at 4:20-5:00 – lying to
Frederick about being represented in the case at bar and telling him that "everybody in
town knows that I used to practice as an attorney"), (*180-872 at 8:40-9:17 – telling Boog
that his law license was suspended and he has to petition for reinstatement), ECF No.
105-2 at PageID #: 1422 (12/12/2019 Jpay communication instructing Briscar to send an
email identifying Plaintiff as "a high profile government lobbyist, who holds a law
degree. . . ."), *with* Memorandum in Opposition (ECF No. 61) at Page ID #: 873 (telling
the Court that "[w]hile Plaintiff was a law undergraduate student from 2006 - 2010,
Plaintiff ultimately opted against pursuing a law degree.  Plaintiff is not an attorney and
would respectfully request leniency from the Court when it comes to formalities.").

(5:19CV2219)

instructed.  *See State of Ohio ex rel. Griffiths v. Portage Cty. Bd. of Comm's*, No. 2019CV00960 (Portage Cty. Common Pleas Ct. filed Dec. 5, 2019); *see also* Docket Sheet (ECF No. 105-12).

Once the taxpayer action was filed, Plaintiff drafted an Emergency Motion for Temporary Restraining Order and Preliminary Injunction was filed on December 11, 2019.  *See* ECF No. 105-12.  Plaintiff stated, "A TRO is extremely powerful." "It literally stops the court in its fucking tracks and the Court has to, has to hear that motion."  ECF No. 105-2 at PageID #: 1421 (*153-83 at 3:00).  McClafferty declared, "We're gonna depose every single fucking person.  I'm gonna make it as brutally, as brutally, as brutal as possible on them."  ECF No. 105-2 at PageID #: 1421 (*153-83 at 6:40).  Although he had Frederick subpoena seven (7) high-ranking Portage County officials[17] for a TRO hearing on February 25, 2020, Plaintiff did not get as far as he had hoped.  The state court granted Respondents' motions and dismissed the taxpayer action because Relators lacked standing to maintain a cause of action under Ohio Rev. Code § 309.12.  *See State of Ohio ex rel. Griffiths v. Portage Cty. Bd. of Comm's*, No. 2019CV00960 (Portage Cty. Common Pleas Ct. Feb. 25, 2020).[18]

While these cases were pending, Plaintiff used Briscar to send scripted emails to the media from Portage.Whistleblower@gmail.com  trying to generate interest in the story.  Plaintiff even attached copies of pleadings he drafted.  ECF No. 105-2 at PageID #: 1422 (1/15/2020 Jpay communicationa); *see also* ECF No. 105-2 at PageID #: 1421 (*152-715 at 10:50 – telling

---

[17]  Todd Bragg, Janet Esposito, Vicki Kline, Sheriff David W. Doak, Chief Deputy Dale Kelly, Commander Robert Symsek, and Michael Burda.

[18]  Frederick and Griffith had also filed a Motion to Waive Fees and Costs.  On July 30, 2020, collection of the past due filing fees in the amount of $193.30 was referred to a third-party collection agent.

(5:19CV2219)

Griffiths that he is briefing the response to Correct Care Solutions' motion to dismiss – "In the last week I've been really putting together some very good stuff. When you see what you guys are gonna file this week. We are going to blast Correct Care. I'm talking outta this world."); (*160-405 at 3:40 – telling Griffiths he just finished up the response to Correct Care's motion and "You are gonna love it. . . . I blast them so fucking hard. . . .").

**II.**

Portage County Defendants move the Court for partial judgment on the pleadings. *See* ECF No. 19. They argue: Plaintiff failed to state a claim for a violation of his Sixth Amendment right to counsel (Count IV); the intracorporate conspiracy doctrine bars Count V for civil conspiracy in violation of § 1983; Count VII fails to state a RICO claim for obstruction of justice and obstruction of official investigation (18 U.S.C. § 1962(c)) because Plaintiff failed to identify any alleged "racketeering activity"; Count VIII fails to state a RICO conspiracy claim (18 U.S.C. § 1962(d)); Count X fails to state an IIED claim against Sheriff Doak in his official capacity; Plaintiff cannot state a claim for indemnification under Ohio Rev. Code § 2744.07; and, Plaintiff failed to state a claim against Defendants Amy Beans, Michael Burda, and Dale Kelly.

The procedural standard for determining a judgment on the pleadings under Fed. R. Civ. P. 12(c) is indistinguishable from the standard of review for dismissals based on failure to state a claim under Fed. R. Civ. P. 12(b)(6). *U.S. ex rel. Bledsoe v. Community Health Systems, Inc.*, 342 F.3d 634, 643 (6th Cir. 2003); *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001) (citing *Mixon v. Ohio*, 193 F.3d 389, 399-400 (6th Cir. 1999)). In deciding a motion to dismiss pursuant to Rule 12(b)(6), or a motion for judgment on the pleadings under Rule 12(c), the Court must take all well-pleaded allegations in the complaint as true and construe those

(5:19CV2219)

allegations in a light most favorable to the plaintiff.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.  The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing authorities).

In other words, claims set forth in a complaint must be plausible, rather than conceivable. *Id.* at 570.  "[When] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  The factual allegations in the complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, p. 235-236 (3d ed. 2004)).

Given the Court's ruling on Portage County Defendants' Motion for Sanctions of Dismissal, Attorney Fees and Costs, Injunctive Relief, and to Declare Plaintiff a Vexatious Litigator (ECF No. 105), Portage County Defendants' Motion for Partial Judgment on the Pleadings (ECF No. 19) is denied without prejudice.

(5:19CV2219)

## III.

Plaintiff moves the Court for an Order to Preserve Evidence.  *See* ECF No. 46.  Plaintiff requests that the Portage County Defendants be required to preserve "all records and documents that they know , or reasonably should know, are relevant to the above titled action."  ECF No. 46 at PageID #: 697.  Plaintiff has moved the Court for a preservation order "because the County Defendants have refused to acknowledge that this well-settled preservation duty applies in this case or to confirm that County Defendants have taken the necessary steps, such as instituting a litigation hold, to abide by it."  ECF No. 46 at PageID #: 698.

Portage County Defendant's obligation to preserve evidence arises by operation of law. A party to civil litigation has a duty to preserve relevant information, including electronically stored information ("ESI" or "E-Discovery"), when that party "has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation."  *Fujitsu Ltd. v. Federal Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001); *see also Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216-18 (S.D.N.Y. 2003).  For this reason, preservation orders are generally unnecessary because parties to civil litigation have "a duty to preserve relevant information. . . ."  *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (citations omitted); *accord Ferron v. EchoStar Satellite, LLC*, 410 Fed.Appx. 903, 911 (6th Cir. 2010).

A duty of preservation arose when the Portage County Defendants had reason to believe that a claim was likely to come from Plaintiff.  That did not happen until September 25, 2019 when the Complaint (ECF No. 1) was received for filing.  Portage County Defendants had no notice of Plaintiff's abuse claims while he was detained in the Portage County Jail.  *See* Affidavit

(5:19CV2219)

of Robert Symsek (ECF No. 51-1). Moreover, there is no evidence to suggest that evidence will be destroyed.

Symsek is employed by the Portage County Sheriff's Office as a Sergeant. From March 2018 to September 2019, he served as the interim Jail Administrator for the Portage County Jail. Sgt. Symsek provided a copy of a video of Plaintiff's escort to administrative lockdown on March 29, 2018, which has been filed with the Court. *See* Notice of Manual Filing (ECF No. 77-1).[19]

The three (3) video surveillance recordings do not completely comport with Plaintiff's allegations in ¶ 78 of the Complaint (ECF No. 1). The first video (with sound), labeled "MCCAFFERTY (sic) DEMEANING TO STAFF - DM5 Door 140," reveals what precipitated his escort to the DM5 housing unit: Plaintiff arguing loudly with a corrections officer ("CO") in front of his fellow inmates. The second video, entitled "mccafferty (sic) 3 29 18 - DM5 Door 140," shows an entirely different CO escorting Plaintiff out the exit door of the DM5 housing unit. This CO did not "shov[e] him violently;" McClafferty resisted the escort. The CO also did not purposefully trip Plaintiff; his left scuff shoe fell off on its own. Furthermore, the CO did not "yank" Plaintiff's handcuffed hands up his back; the CO's hands were on McClafferty's back, and Plaintiff's arms never moved. The third video, labeled "mccafferty (sic) #2 - DM Hall 2" is a completely innocuous tape of Plaintiff walking down a long hallway, escorted by three corrections officer. Most importantly, there was never any claim or evidence of injury from this

---

[19] Portage County Defendants initially believed the video had been overwritten pursuant to the Portage County Jail's retention policy. The video was burned to disc before the system overwrote it. The disc was unlabeled and the Sheriff's Office did not realize what it contained until after this suit was filed. Portage County Defendants manually filed a DVD containing the 3/29/2018 Jail Video. *See* ECF No. 85.

(5:19CV2219)

escort.  *See also* ECF No. 95-1 (Four (4) Inmate Incident Reports dated 3/29/2018); ECF No. 95-2 (4/4/2018 medical kite); ECF No. 95-3 (4/4/2018 nursing documentation); ECF No. 95-4 (4/9/2018 Medical Information Transfer Form).

Plaintiff's Motion for Order to Preserve Evidence (ECF No. 46) is denied because an Order is neither necessary nor appropriate.

**IV.**

On July 2, 2020, Plaintiff filed an Emergency Motion to Reconsider; Request for Court to Enter Findings of Fact and Conclusions of Law (ECF No. 48).

On June 16, 2020, the Portage County Defendants served a subpoena on LaECI for Plaintiff's visitor logs, emails and recorded telephone calls.  McClafferty moved to quash the subpoena.  *See* ECF No. 40.  Portage County Defendants opposed the motion to quash and moved for an order permitting LaECI to produce the telephone conversations as required under Ohio Rev. Code § 5120.21.  *See* ECF No. 44.  On June 26, 2020, the Court denied the motion to quash and, citing the clarity of the established record, granted the Portage County Defendants an order permitting them to obtain the recorded LaECI calls.  Order (ECF No. 45).  On June 29, 2020, the 1,300+ LaECI telephone calls were produced to counsel for the Portage County Defendants.  *See* ECF No. 54-1.

Plaintiff argues that the Court should reconsider its denial of his motion to quash.  Plaintiff's telephone calls were not privileged and his motion to quash is moot.  The telephone recordings have already led to extremely relevant evidence, so the scope of the subpoena was not overbroad.  Finally, under Fed. R. Civ. P. 52(a)(3), findings of fact and conclusions of law are

(5:19CV2219)

not required ("The court is not required to state findings or conclusions when ruling on a motion

under Rule 12 or 56 or, unless these rules provide otherwise, on any other motion.").

In a document entitled "Plaintiff's Withdrawal of Motion to Reconsider; Request for

Reciprocal Discovery," Plaintiff states that he "withdraws his motion for reconsideration (ECF

No. 48) as the issue is moot."  ECF No. 56 at PageID #: 817.  To the extent Plaintiff's

Emergency Motion to Reconsider; Request for Court to Enter Findings of Fact and Conclusions

of Law (ECF No. 48) requests a ruling from the Court, it is denied.

## V.

Portage County Defendants move the Court pursuant to Fed. R. Civ. P. 45(d)(3)(A)(iii) to

quash the Subpoena (ECF No. 52-3 at PageID #: 755-59), which Plaintiff intended to serve on

the Portage County prosecutor.  *See* ECF No. 52.  A July 5, 2020 Press Release (ECF No. 55-1 at

Page ID #: 796) informed Plaintiff that the Portage County Prosecutor's Office had received and

reviewed the investigations into allegations of abuse and mistreatment by 23 former inmates of

the Portage County Jail. The subpoena seeks the Investigative Report that was referred in June

2020 to the Portage County and Ashtabula County prosecutors.

"The federal law enforcement privilege is 'a qualified privilege designed to prevent

disclosure of information that would be contrary to the public interest in the effective functioning

of law enforcement.' " *In re Packaged Ice Antitrust Litig.*, No. 08-md-019522011 WL 1790189,

at *6 (E.D. Mich. May 10, 2011) (quoting *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 10

(D.D.C. 2010)).  "Three requirements must be met by the Government to prevail on its claim of

privilege:  '(1) there must be a formal claim of privilege by the head of the department having

control over the requested information; (2) assertion of the privilege must be based on actual

(5:19CV2219)

personal consideration by that official; and (3) the information for which the privilege is claimed

must be specified, with an explanation why it properly falls within the scope of the privilege.' "

*Hamama v. Adducci*, No. 17-cv-11910, 2018 WL 2445042, at *1 (E.D. Mich. May 31, 2018)

(quoting *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988)).  Here, the Portage County

prosecutor has satisfied the three (3) prongs of the test for invoking the privilege.  *See* Affidavit

of Victor Vigluicci (ECF No. 52-2).

> Next, the Court considers the following factors:
>
> (1) the extent to which disclosure will thwart governmental processes by
> discouraging citizens from giving the government information; (2) the impact
> upon persons who have given information of having their identities disclosed; (3)
> the degree to which governmental self-evaluation and consequent program
> improvement will be chilled by disclosure; (4) whether the information sought is
> factual data or evaluative summary; (5) whether the party seeking discovery is an
> actual or potential defendant in any criminal proceeding either pending or
> reasonably likely to follow from the incident in question; (6) whether the police
> investigation has been completed; (7) whether any intradepartmental disciplinary
> proceedings have arisen or may arise from the investigation; (8) whether the
> plaintiff's suit is non-frivolous and brought in good faith; (9) whether the
> information sought is available through other discovery or from other sources; and
> (10) the importance of the information sought to the plaintiff's case.

*Kauffman v. Medina Cty. Clerk of Courts*, No. 1:13-CV-01261, 2014 WL 1051026, at *7-8 (N.D.

Ohio March 14, 2014) (White, M.J.) (quoting *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738

F.2d 1336, 1342-43 (D.C.Cir. 1984) (citations omitted).  After considering the 10 factors, the

Court finds the law enforcement privilege should apply under the circumstances of the case at

bar.  The Portage County prosecutor and/or the Ashtabula County prosecutor are still considering

whether to file charges against the 23 former inmates of the Portage County Jail, including

Plaintiff himself.

(5:19CV2219)

Portage County Defendants' Motion to Quash Subpoena to Portage County (ECF No. 52) is granted because the Subpoena (ECF No. 52-3 at PageID #: 755-59) improperly requires the Portage County prosecutor to disclose privileged and protected matter.  The Investigative Report is protected from discovery by the law enforcement privilege.

## VI.

Portage County Defendants move the Court pursuant to Fed. R. Civ .P. 12(f), 34, and 37 to strike or deny Plaintiff's "Request for Reciprocal Discovery" (ECF No. 56).  In Plaintiff's Response, entitled "Plaintiff's Opposition to County Defendants' Motion to Strike; Request for Clarification in the Alternative," McClafferty requests "clarification from this Honorable Court as to whether Plaintiff is permitted to request discovery pursuant to Fed. R. Civ. P. 34 given County Defendants' [R]ule 12(c) motion that is currently pending before this Court." ECF No. 61 at PageID #: 871.

While McClafferty is representing himself in this matter, he is still expected to adhere to the rules governing litigation in this court.  *See Fields v. Cnty. of Lapeer*, No. 99-2191, 2000 WL 1720727 (6th Cir. Nov. 8, 2000) (quoting *Bradenburg v. Bearman*, 632 F.2d 120, 122 (10th Cir. 1980) ("it is incumbent on litigants, even those proceeding pro se, to follow the . . . rules of procedure.")).  If Plaintiff wishes to request discovery, he must do it as the rules prescribe.  He is not permitted to demand discovery via motion, brief or notice of withdrawal.[20]  Plaintiff is also

---

[20]  Plaintiff subsequently submitted written discovery requests.  *See* Plaintiff's First Set of Interrogatories and Requests for Admission propounded on Defendants Morgenstern, Burns, and Germanito (ECF Nos. 99-1, 99-2, and 99-3).

(5:19CV2219)

not entitled to legal advice from the Court.  _Smith v. Palmer_, No. 11-CV-12765, 2011 WL 2623301, at *1-2 (E.D. Mich. July 5, 2011) (quoting _McCaskle v. Wiggins_, 465 U.S. 168, 183-84 (1984)) ("The ironclad prohibition on courts rendering legal advice to litigants does not change merely because a party elects to proceed _pro se_.  As the Supreme Court has stated, 'A [litigant] does not have a constitutional right to receive personal instruction from the trial judge on courtroom procedure.  Nor does the Constitution require judges to take over chores for a _pro se_ [litigant] that would normally be attended to by trained counsel as a matter of course.' ").

Portage County Defendants' Motion to Strike Plaintiff's Request for Reciprocal Discovery (ECF No. 58) is granted.

**VII.**

Portage County Defendants move the Court pursuant to Fed. R .Civ. P. 37(a)(4) for an order compelling Plaintiff to:

1)  Provide within ten (10) days a signed copy of the negotiated medical authorization sufficient to permit the Portage County Defendants to obtain records from all of the providers McClafferty identified in discovery and to canvass the area for records from any possible provider who could have treated him for his claimed injuries;

2)  Supplement and/or correct his responses to Interrogatory Nos. 2, 7, 8, 9, 10, 12, 24, 31 and 32; and,

3)  Provide a verification for the supplemented responses above.

Portage County Defendants' Motion to Compel Plaintiff to Respond to Interrogatories (ECF No. 60) is denied without prejudice.

(5:19CV2219)

**VIII.**

Coleman and Dr. Welsh move the Court for judgment on the pleadings on the Complaint
(ECF No. 1), inclusive of Counts V, IX, and X.  *See* ECF No. 66.  They join in Defendant
Correct Care Solutions, LLC's Motion to Dismiss (ECF No. 9)[21] and the Portage County
Defendants' Motion for Partial Judgment on the Pleadings (ECF No. 19).  They also argue the
Complaint (ECF No. 1) fails to state the following claims against them:  a § 1983 claim for
"cover up"; a claim under the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. §
1395dd; and, a claim for IIED (alternatively, the Court should decline jurisdiction to hear Count
X, as it is the only remaining claim and is state-law based).

The procedural standard for determining a judgment on the pleadings under Fed. R. Civ.
P. 12(c) is set forth in Section II, *supra*.  Given the Court's ruling on Coleman and Dr. Welsh's
Motion for Sanctions of Dismissal and Designation of Plaintiff as a Vexatious Litigator (ECF
No. 108), Coleman and Dr. Welsh's Motion for Judgment on the Pleadings (ECF No. 66) is
denied without prejudice.

**IX.**

Portage County Defendants move the Court for (1) a protective order preventing Plaintiff
from communicating directly with represented parties on matters concerning this lawsuit and (2)
an order striking McClafferty's Notice of Proposed Settlement Offer (ECF No. 65) from the
record.  *See* ECF No. 69.

---

[21] ECF No. 9 was granted on September 29, 2020.  *See* Memorandum of Opinion
and Order (ECF No. 96).

(5:19CV2219)

On August 19, 2020, the Court received for filing Plaintiff's Notice (ECF No. 65) that he

had made an unsolicited settlement demand to Portage County Commissioner Vicki Kline by

letter dated August 13, 2020.  In that letter, McClafferty offered to settle his claims against the

Portage County Defendants – and dismiss his claims against the other defendants – if Portage

County would meet his terms.  This was done without the knowledge or consent of their counsel.

Plaintiff should not be communicating directly with any represented party about the case

at bar.  *See Gaines-Hanna v. Farmington Pub. Sch. Dist.*, No. 04-CV-74910-DT, 2006 WL

891434, at *1 (E.D. Mich. March 31, 2006) ("Although plaintiff, as a non-attorney, is not

technically bound by the Rules of Professional Conduct, in her capacity as a *pro se* plaintiff she

is nevertheless required to refrain from directly contacting the named defendants in accordance

with Rule 4.2.").  If Plaintiff wishes to make an unsolicited settlement demand, he should do so

off the record.

Portage County Defendants' Motions for Protective Order and to Strike (ECF No. 69) are

granted.

**X.**

Plaintiff admitted in recorded telephone conversations that he used the inmate account of

Kirk Scott, Jr. ("Boog"), his former bunkmate, to camouflage his more sensitive phone calls.

Portage County Defendants have obtained an analysis performed by the ODRC that shows seven

(7) common telephone numbers called by both Plaintiff and "Boog."  *See* ECF No. 71-3.  They

move the Court for an order pursuant to Ohio Rev. Code § 5120.21 permitting LaECI to produce

select inmate recorded telephone calls made from Boog's account to the seven (7) telephone

numbers also called by Plaintiff.

(5:19CV2219)

Portage County Defendants' Motion for Order Permitting LaECI to Release Additional Inmate Phone Calls (ECF No. 71) is denied without prejudice.

## XI.

Plaintiff moves the Court for leave to file a Surreply in response to new arguments, requests, and factual claims made by the Portage County Defendants in their Reply in Support of Motion to Compel Plaintiff to Respond to Interrogatories (ECF No 67).

Plaintiff's Motion for Leave to File Surreply (ECF No. 75) is granted.

## XII.

Plaintiff moves the Court to issue an order authorizing the Clerk of Court to execute Plaintiff 's Subpoena *Duces Tecum* directed to Victor Vigluicci (ECF No . 53), and to also authorize its subsequent service by the U.S. Marshals Service as prescribed for plaintiffs who have been granted permission to proceed *in forma pauperis*.

Plaintiff's Request for Order Authorizing Clerk to Execute Previously Filed Subpoena and to Effectuate Service (ECF No. 78) is denied for the reasons set forth in Section V, *supra*.

## XIII.

Plaintiff moves the Court for an Order prohibiting the Portage County Defendants from offering evidence or arguments contrary to the video evidence provided by them to the Court in the DVD containing the 3/29/2018 Jail Video (ECF No. 85).

The escort of Plaintiff to a maximum security cell is documented in the jail log, along with the reasons for the escort and a mention of Plaintiff's observable resistance.  *See* ECF No. 95-1 (Four (4) Inmate Incident Reports dated 3/29/2018).  The only medical kite Plaintiff submitted around the time of his March 29, 2018 escort to administrative lockdown reflected a

(5:19CV2219)

complaint about having a cold – nothing about an injury from the escort, much less an

aggravated, pre-existing shoulder injury.  *See* ECF No. 95-2 (4/4/2018 medical kite); ECF No.

95-3 (4/4/2018 nursing documentation).  When Plaintiff was transferred from the Portage County

Jail to Lorain Correctional Institution, the only injury identified in his transfer form was a "knee,

leg, ankle, foot injury not otherwise specified" – an injury that predated his detention at the

Portage County Jail.  *See* ECF No. 95-4 (4/9/2018 Medical Information Transfer Form).  Portage

County Defendants have a good faith belief in their theory of the case and they are entitled to

advance it.

Plaintiff's Motion *in Limine* Requesting That This Court, on Judicial Estoppel Grounds,

Prohibit County Defendants From Taking Positions Inconsistent With Video Evidence Provided

to the Court by County Defendants (ECF No. 90) is denied.

**XIV.**

Defendants Morgenstern, Burns, and Germani move the Court pursuant to Fed. R. Civ. P.

26(b)(2)(A), (C) and (c) for a protective order prohibiting Plaintiff from enforcing the Requests

for Admissions he served on each Defendant.

Plaintiff served a total of 115 requests for admission on Morgenstern, Burns, and

Germani.  *See* ECF Nos. 99-1, 99-2, and 99-3.  Rule 26(b)(1) limits the topic of requests to any

"nonprivileged matter that is relevant to any party's claim or defense and proportional to the

needs of the case, considering [*inter alia*] . . . the importance of the discovery in resolving the

issues, and whether the burden or expense of the proposed discovery outweighs its likely

benefit."  Rule 26(b)(2)(A) authorizes the Court to limit the number of a party's requests.

(5:19CV2219)

Finally, Rule 26(c) grants the Court discretion to protect a party from annoyance, oppression, undue burden or expense by forbidding a particular discovery effort.

Defendants Germani, Burns and Morganstern's Motion for Protective Order Pertaining to Plaintiff's Requests for Admission (ECF No. 99) is granted.  *See Taylor v. Great Lakes Waste Servs.*, No. 06-CV-12312-DT, 2007 WL 422036, at *3 (E.D. Mich. 2007) (holding that a limit of 25 requests per party is a reasonable number when a case does not involve complex issues); *Dassault Systemes, SA v. Childress*, No. 09-10534, 2013 WL 12181775, at *6 (E.D. Mich. Sept. 5, 2013) (granting protective order because serving party's "requests for admission suffer from a number of defects, including the improper use as a discovery device, an excessively burdensome number of requests, and the inclusion of the central facts in dispute").

**XV.**

Defendants' Joint Motion for Status Conference (ECF No. 102) is denied as moot.

**XVI.**

Portage County Defendants move the Court:  (1) to use its inherent power to sanction Plaintiff by dismissing this action with prejudice and awarding the Portage County Defendants their attorney's fees and costs; (2) alternatively, dismiss this action with prejudice pursuant to 28 U.S.C. § 1915 because Plaintiff misrepresented his pauper status; (3) declare Plaintiff a vexatious litigator; and (4) issue a permanent injunction denying Plaintiff *in forma pauperis* status and precluding him (directly or indirectly) from pursuing litigation against the Portage County Board of Commissioners, its elected officials, and current and former employees without first obtaining leave of Court.  For the reasons set forth below, the Court grants the motion as to the first and second requests and denies the motion as to the third and fourth requests.

(5:19CV2219)

### A.

Portage County Defendants move the Court to dismiss the Complaint (ECF No. 1) with prejudice pursuant to its inherent powers as a sanction for Plaintiff's misconduct.  Courts have the inherent power to sanction litigants for conduct that constitutes an abuse of the judicial process.  *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944), *overruled on other grounds, Standard Oil Co. v. United States*, 429 U.S. 17, 18, 97 (1976) (describing fraud on the court as "a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society"); *see also Jones v. Continental Corp.*, 789 F.2d 1225, 1229 (6th Cir. 1986) (courts have the inherent power to punish with sanctions those who litigate in bad faith).  "These powers come not from rule or statute but from 'the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " *Stalley v. Methodist Healthcare*, 517 F.3d 911, 920 (6th Cir. 2008) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). "Even if there [are] available sanctions under statutes or various rules in the Federal Rules of Civil Procedure . . . the inherent authority of the Court is an independent basis for sanctioning bad faith conduct in litigation." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 511 (6th Cir. 2002) (footnote omitted).  "A district court may impose sanctions pursuant to its inherent authority 'to control the litigants before it and to guarantee the integrity of the court and its proceedings.' " *Holmes v. U.S. Bank*, No. 1:07-CV-695, 2009 WL 1542786, at *6 (S.D. Ohio May 28, 2009) (quoting *First Bank of Marietta*, 307 F.3d at 512).  Courts may use their inherent authority to sanction a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons" or who has engaged in conduct that was

(5:19CV2219)

"tantamount to bad faith." *Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 502-03 (N.D. Ohio March 11, 2013) (Lioi, J.) (quoting *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011)).  A court may even dismiss a case in its entirety if warranted by a "plaintiff's bad faith, fraudulent conduct, and abuse of the judicial process." *Jones v. Bergh*, No. 2:08-cv-128, 2011 WL 5180569, at *2 (W.D. Mich. Oct. 31, 2011); *see also Clemons v. DeWine*, No. 19-3033, 2019 WL 7567197, at *3 (6th Cir. May 1, 2019).  For the reasons set forth below, Plaintiff is one of the few litigants who deserve such severe sanctions.

**1.**

Plaintiff has been evasive and obstructive in discovery.  Portage County's jail log shows that no event occurred involving Plaintiff on October 20, 2017.  University Hospitals denies that it treated Plaintiff on October 20 or 21, 2017.  *See* ECF No. 70-1.  Portage County's inmate telephone logs show that Plaintiff made several phone calls the day of and the day after his alleged torture.  Telephone Log (ECF No. 105-13).  Yet he never mentioned a word about it to anyone.

Plaintiff has not cooperated with the Portage County Defendants' discovery efforts to have him produce evidence to support his claims that Sheriff's Deputies beat and tortured him on October 20, 2017 causing him to suffer a dislocated shoulder for which he received emergency

(5:19CV2219)

medical treatment at University Hospitals.[22] Plaintiff will not sign medical authorizations and answer the most basic questions about his claims. *See* ECF No. 60.

Plaintiff declares that he does "not recall [his] proxies ever using any other email addresses" besides "MCCLAFFERTY.PROXY@GMAIL.COM to facilitate [his] needs (mainly legal) while incarcerated." ECF No. 60-3 at PageID #: 870, Answer to Interrogatory Nos. 31 and 32. In contrast, ECF No. 67-1 contains 33 pages of Jpay communications sent by Plaintiff to Briscar instructing him what to send and from which email account. How then can Plaintiff tell Defendants, "I do not have any way to access any email account, social media account, or text messages due to my incarceration, and therefore cannot produce these records, even if they exist." ECF No. 105-23 at PageID #: 1555, No. 8.[23] Plaintiff accessed email accounts, text messages, social media, and the internet from prison whenever it suited him. Plaintiff also issued press releases, orchestrated media campaigns, circulated petitions, gave telephone interviews, solicited inmate complaints, enlisted friends to create false identities to post on social media and

---

[22] Plaintiff consistently told others that he was treated by University Hospitals after the alleged October 20, 2017 "torture." *See* ECF No. 105-8; ECF No. 105-2 at PageID #: 1421 (*185-387 at 13:50-14:45 – telling his mother that his lawsuit against Portage County will be front page above the fold and assuring her that "It's all documented. There's nothing to lie about, so. I don't need anybody to take my word for it, all I gotta do is subpoena the records. The records are crystal clear. University Hospitals isn't gonna lie."). After Defendants provided a "no-records statement" from University Hospitals, Plaintiff changed his story. Now, he claims that he cannot remember where he was treated. *See* ECF No. 60 at PageID #: 847. And if Plaintiff doesn't remember where he was treated, how can he be "awaiting medical records" as he asserts throughout his discovery responses? *See* Portage County Defendants' Motion to Compel Plaintiff to Respond to Interrogatories (ECF No. 60); Responses to Portage County Defendants' First Set of Requests for Production of Documents (ECF No. 105-23).

[23] The parties are under an ongoing duty to supplement or correct discovery responses under Fed. R. Civ. P. 26(e)(1).

(5:19CV2219)

send emails and texts whose content he dictated.  He even prosecuted two lawsuits he drafted

without a law license using "straw men."  But when it comes to providing discovery to

Defendants, Plaintiff asserts he is powerless.

## 2.

Plaintiff is not just obstructive and evasive in discovery, he has outright lied to the Court

when it suits him.  McClafferty lied to the Court when he represented that Amanda Griffiths

"initiat[ed] the [taxpayer] action on her own accord."  ECF No. 64 at PageID #: 886; *see* Section

I.C.4., *supra*.  Plaintiff also deceived the Court when he represented that he did not know Kirk

Scott, Jr. ("Boog"), his former bunkmate.  ECF No. 78 at PageID #: 1063 ("Plaintiff has no

specific recollection of an inmate by that name").  McClafferty knew full well who "Boog" was.

He walked Scott to the gate on January 7, 2020, the day he was released from prison.  *See* ECF

No. 86-1 at PageID #: 1142 (1/7/2020 email from McClafferty to Briscar).  Scott is a man

Plaintiff called "family" and a "friend for life," a man to whom McClafferty had his mother send

hundreds of dollars after his release from prison, and a man with whom Plaintiff still speaks

regularly.  *See, e.g.*, ECF No. 86; ECF No. 105-2 at PageID #: 1421 (*210-16 at 10:40-11:30 – in

a telephone call to his mom on the day of Boog's release from prison, Plaintiff asks his mom to

buy Scott a $100 Nike gift card and send it to Scott's sister); (*170-787 at 6:45 – in another call

to his mother later that month, Plaintiff asks his mom to send a $100 check to Scott).  Next,

Plaintiff misrepresented that he "does not recall having conversations with proxies in which he

'advised' them to setup email accounts or to send emails on Plaintiff's behalf separate and apart

from the MCCLAFFERTY.PROXY@GMAIL.COM email address . . . [because] it's just not

something that Plaintiff ever mentally prioritized as important information, and thus, he does not

(5:19CV2219)

recall it." ECF No. 64 at PageID #:885-86.  Finally, Plaintiff lied to the Court when he

represented that the "LAECI Rule Infraction Board dismissed the conduct report because

Administrative Rule 5120 expressly allows general population inmates to assist other general

population inmates in preparing legal documents." ECF No. 41 at PageID #: 671 (underlining in

original); *see* Warden's Decision on Appeal, dated March 6, 2020 (ECF No. 105-14) (affirming

decision of the Rules Infraction Board that there is sufficient evidence Plaintiff violated a

published institutional rule by assisting other inmates with legal work without staff authorization

and possessing 35 legal documents McClafferty drafted and completed for other inmates in

2019/2020).

Plaintiff's pervasive misconduct warrants the sanction of dismissal with prejudice.  In a

case involving a single instance of far less egregious misconduct than Plaintiff's in the case at

bar, the Seventh Circuit affirmed dismissal with prejudice as a sanction for lying to the court.

*See Ayoubi v. Dart*, 640 Fed.Appx. 524 (7th Cir. March 3, 2016) (affirming sanction of dismissal

with prejudice without a live hearing of Eighth Amendment claims brought by pretrial detainee

who lied to the court about the extent to which he was permitted library access).

**B.**

Plaintiff has abused the administrative and judicial systems to advance his own agenda

against Portage County in at least four instances.  First, Plaintiff told Briscar to email the

television news reporter in Cleveland that an "anonymous" whistleblower complaint to the OIG

and Ohio Auditor of State had been made against the Portage County Sheriff by one of his

employees.  Second, Plaintiff, on behalf of Larry Tawney, submitted a false charge to the Ohio

Civil Rights Commission of abuse and that video surveillance footage was being manipulated.

(5:19CV2219)

*See* ECF No. 105-9.  Third, Plaintiff enlisted Austin Frederick as a "straw man" to file a

mandamus action against Sheriff Doak.  *See Frederick v. Doak*, No. 2019CV00917 (Portage Cty.

Common Pleas Ct. filed Nov. 21, 2019) .  Finally, Plaintiff used Frederick and Griffiths as "straw

men" to file a taxpayer action against the Portage County Board of Commissioners and others.

*See State of Ohio ex rel. Griffiths v. Portage Cty. Bd. of Comm's*, No. 2019CV00960 (Portage

Cty. Common Pleas Ct. filed Dec. 5, 2019).

**1.**

Plaintiff filed a Request for Court to Take Judicial Notice of Public Records and Federal

Complaint (ECF No. 35).  One of the "public records" was a redacted version of the

"anonymous" complaint jointly addressed to the OIG and the Ohio Auditor of State (ECF No.

35-1 at PageID #: 448-51.  The circumstantial evidence discussed in Section I.C.1., *supra*,

strongly suggests that Plaintiff or his "proxy" authored and redacted the whistleblower

complaint.  While Plaintiff denies that he wrote the "anonymous" complaint, *see* ECF No. 107 at

PageID #: 1570, he did not deny that his proxy wrote it.  How did Plaintiff know about this

confidential complaint just two days after it was dated?  How did Plaintiff's "attorney" obtain a

redacted version of the complaint before 8:00 a.m. on Monday, October 7, 2019, when the

recipients did not receive the complaint until, at the earliest, October 17, 2019?  Why would

Plaintiff have his "attorney" send the redacted complaint to McClafferty's case manager?  Why

not have his "attorney" email it to Briscar directly?  It is reasonable for the Court to infer from

this evidence that Plaintiff or his "proxy" authored the "anonymous" complaint, redacted it to

mask the fact that McClafferty submitted it anonymously, and used that redaction to facilitate a

(5:19CV2219)

false narrative that the complaint was made by an employee of the Sheriff's Office.  *See* ECF No. 105-2 at PageID #: 1422 (10/5/2019 Jpay communication from Plaintiff to Briscar).

A party's fabrication and presentation of false documents to the court is a classic example of the type of misconduct that implicates a court's inherent authority and warrants a sanction of dismissal.  *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510-17 (6th Cir. 2002); *Mohammed v. Complete Personnel Logistics*, No. 1:15-cv-414, 2016 WL 3766401, at *4 (S.D. Ohio July 8, 2016)* ("In light of plaintiff's submission of a falsified document in this case, the Court recommends dismissal of his complaint with prejudice."), *report and recommendation adopted*, No. 1:15-cv-414, 2016 WL 4264338 (S.D. Ohio Aug. 12, 2016) (dismissing case with prejudice).

**2.**

By asking the Court to take judicial notice of the "anonymous" complaint to the OIG and the Change.org petition, Plaintiff submitted false evidence to the Court.  That alone is grounds for dismissal of the Complaint (ECF No. 1).[24]  "Federal courts have 'the inherent power' to sanction a party 'upon proof that a fraud has been perpetrated upon the court.' "  *Mohammed v. Penske Logistics, LLC*, No. 1:02-CV-853, 2007 WL 9725162, at *4 (S.D. Ohio June 7, 2007) (quoting *Chambers*, 501 U.S. at 44).

In addition to requesting that the Complaint (ECF No. 1) be dismissed as a sanction for Plaintiff's misconduct, the Portage County Defendants ask that the Court award them fees and

---

[24]  Briscar was subpoenaed for all communications he sent or received on behalf of Plaintiff from any email or text accounts.  He claims that the Youngblood account "sounds familiar" but, like the other accounts he used, claims he no longer has access to it.  *See* Response to Subpoena (ECF No. 105-17) at PageID #: 1497.

(5:19CV2219)

expenses against McClafferty.  *See Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765-66 (1980) (if

litigant demonstrates bad faith in the conduct of litigation, court has inherent authority to assess

attorney's fees).

> In *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501 (6th Cir. 2002), the Sixth Circuit held that a district court has the inherent authority to impose an award of attorney's fees and other sanctions against a party in its discretion, if:  (1) the claim asserted by the party was meritless; (2) counsel knew or should have known that the claim was meritless; and (3) the claim was filed for an improper purpose such as harassment or delay.  *Id.* at 519-24.  "In this Circuit, 'bad faith' is a requirement for the use of the district court's inherent authority, but this Circuit has also upheld the use of such sanctions for conduct that 'was tantamount to bad faith.' "  *Id.* at 519.  The moving party must prove by clear and convincing evidence that the other party's actions are entirely without color and are motivated by bad faith.  *See Shepherd v. American Broadcasting Companies, Inc.*, 62 F.3d 1469, 1477 (D.C.Cir.1995) ("courts require clear and convincing evidence before imposing attorneys' fees under their inherent power"); *Autorama Corporation v. Stewart*, 802 F.2d 1284, 1287 (10th Cir. 1986) ("it is not surprising that attorneys' fees are awarded only when there is 'clear evidence' that the challenged actions are taken entirely without color and are pursued for reasons of harassment or delay"); *Weinberger v. Kendrick*, 698 F.2d 61, 80 (2nd Cir. 1982) ("We have required . . . that there be 'clear evidence' that the challenged actions 'are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes."), *cert. denied*, 464 U.S. 818 (1983).

*Garner v. Cuyahoga Cty. Juv. Ct.*, No. 1:02CV1286, 2007 WL 1023179, at *3 (N.D. Ohio March

30, 2007) (Adams, J.).

Here, there is clear and convincing evidence that Plaintiff filed the case at bar in bad faith

and for improper purposes.  Most of that evidence comes from McClafferty's admissions in the

form of Jpay communications, *see* ECF No. 106 at PageID #: 1563, and recorded prison calls, *see*

ECF No. 106 at PageID #: 1562.

## C.

(5:19CV2219)

The Portage County Defendants request that the Court issue a permanent injunction prohibiting Plaintiff (directly or indirectly) from filing any litigation against Portage County, its elected officials or current and former employees without prior approval from the Court because of his frivolous and vexatious litigation in state and federal court, as well as administrative agencies.

"While the Court is very tolerant of legal filings from *pro se* litigants, its tolerance is not without limits." *United States v. Rotnem*, 5:16CR0388, 2020 WL 2063408, at *2 (N.D. Ohio April 29, 2020) (Lioi, J.). The Court has a responsibility to "protect [its] jurisdiction from conduct which impairs the ability to carry out Article III functions," *Douglas v. City of Cleveland*, 1:12-cv-1145, 2012 WL 4753365, at *7 (N.D. Ohio Oct. 4, 2012) (Boyko, J.), and to "prevent litigants from unnecessarily consuming judicial resources needed by others," *Rotnem*, 2020 WL 2063408, at *2. To enable them to do so, district courts have discretion to "enjoin[ ] vexatious and harassing litigants by requiring them to obtain leave of court before submitting additional filings." *Id.* (citing *Filipas v. Lemons*, 835 F.2d 1145, 1146 (6th Cir. 1987)); *see also Wrenn v. Vanderbilt Univ. Hosp.*, Nos. 94-5453, 94-5593, 1995 WL 111480 (6th Cir. March 15, 1995) (authorizing a court to enjoin harassing litigation under its inherent authority and the All Writs Act, 28 U.S.C. § 1651(a) (citations omitted)). Furthermore, federal courts possess the power to issue narrowly-tailored orders to enjoin vexatious litigants from filing future state court actions without permission from the court. *Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002).

The Court declines to impose a vexatious litigant order against Plaintiff in light of all of the proceedings in the record.

(5:19CV2219)

**D.**

Proceeding *in forma pauperis* is a privilege, not a right.  *Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).  Section 1915(e)(2)(A), Title 28, provides, in relevant part, that "[n]otwithstanding any filing fee, or portion thereof, that may have been paid, the court *shall* dismiss the case at any time if the court determines that . . . the allegation of poverty is untrue."  When a court determines that a plaintiff's allegations of poverty are untrue, dismissal is required under the mandatory language of the statute.  *See Redd v. Redmon*, No. 99-6001, 2000 WL 658291, at *1 (6th Cir. May 9, 2000) ("Section 1915(e)(2)(A) requires the district court to dismiss the case if the court determines that the allegation of poverty is untrue"); *Johnson v. Working America*, No. 1:12CV1505, 2013 WL 3822232 (N.D. Ohio July 23, 2013) (adopting report and recommendation) (Boyko, J.).

As stated by former U.S. Magistrate Judge Greg White in *Johnson*:

> . . . Federal courts of appeals, including the Sixth Circuit, have held that district courts have the discretion to dismiss a case with prejudice where a plaintiff intentionally and in bad faith misrepresents his financial status in order to proceed *in forma pauperis*.  *See e.g. Thompson v. Carlson*, 705 F.2d 868, 869 (6th Cir. 1983); *Vann v. Comm'r of the New York Dep't of Corr.*, 2012 WL 4010492 at *2 (2nd Cir. Sept.13, 2012); *Thomas v. General Motors Acceptance Corp.*, 288 F.3d 305, 306-307 (7th Cir. 2002); *Romesburg v. Trickey*, 908 F.2d 258, 260 (8th Cir. 1990).  In this context, "bad faith . . . includes deliberate concealment of income in order to gain access to a court without prepayment of fees."  *Vann*, 2012 WL 4010492 at *2 (citing *Cuoco v. U.S. Bureau of Prisons*, 328 F. Supp.2d 463, 467-68 (S.D.N.Y. 2004)).  *See also Jones v. Michigan Dep't of Human Services*, 2013 WL 640771 at *1 (E.D.Mich. Feb. 21, 2013).

2013 WL 3822232, at *5.  The district court has discretion to determine whether the action is dismissed with or without prejudice.  *Compare Thompson v. Carlson*, 705 F.2d 868, 869 (6th Cir. 1983) (affirming dismissal of an action *with* prejudice due to false poverty allegations in an

(5:19CV2219)

IFP motion); *with* *Redd*, 2000 WL 658291, at *2 (affirming dismissal of an action *without*

*prejudice* due to false poverty allegations in an IFP motion).  "[T]o dismiss without prejudice

where an applicant intentionally lies on an IFP form would encourage the very perjury Congress

sought to deter in § 1915."  *Justice v. Granville Cnty. Bd. of Educ.*, Nos. 5:10-CV-539–BR, 5:11-

CV-99-BR, 5:11-CV-400-BR, 5:11-CV-706-BR, 2012 WL 1801949, at *5 (E.D.N.C. May 17,

2012) (quoting *Mullins v. Hallmark Data Systems, LLC*, 511 F. Supp.2d 928, 940 (N.D. Ill.

2007)), *aff'd sub nom.*, 479 Fed.Appx. 451 (4th Cir. 2012).

Plaintiff printed and signed his name on the request for permission to proceed *in forma

pauperis* and noted the date – September 20, 2019.  ECF No. 2 at PageID #: 81.  The IFP

Application form (AO239 (4/13) N.D.OHIO) clearly and unambiguously asks questions in plain

English and is designed for use by non-lawyers.  Under Section 7, the IFP Application required

that Plaintiff list "Other Assets."  Plaintiff responded "n/a."  Section 8 of the IFP Application

required that Plaintiff "[s]tate every person, business or organization owing you or your spouse

money, and the amount owed."  Plaintiff responded that"GOODFELLAS ROOFING" owed him

"$144,000.00."  Plaintiff responded "0", "0.00" or "n/a" to the remaining questions about his

assets.  In response to Question 2 on the Affidavit of Prisoner (ECF No. 2-1), Plaintiff answered

that $20.00 is credited to him each month by the agency which had custody of him due to "a

work, program or status assignment, or other circumstance."  ECF No. 2-1 at PageID #: 87-88.

**1.**

After uncovering during discovery alleged discrepancies between statements that Plaintiff

made and those that he had previously made in his request for permission to proceed *in forma*

(5:19CV2219)

*pauperis* (ECF No. 2), the Portage County Defendants move to dismiss the Complaint (ECF No. 1).  They argue Plaintiff intentionally misrepresented his financial status in ECF No. 2, especially as it relates to his Bitcoin cryptocurrency investment that was liquidated resulting in a deposit of at least $1.265 million into an escrow account in his favor in the U.S. Virgin Islands.

In his recorded prison calls (ECF No. 105-2 at PageID #: 1421; ECF No. 105-2 at PageID #: 1423[25]), Plaintiff was heard telling friends and family that he has plenty of money.  The following evidence suggests that McClafferty was dishonest about his finances in his IFP application because his representations to the Court are completely inconsistent with the following statements.

• In support of his IFP application, Plaintiff  attached proof of his bankruptcy discharge dated September 21, 2017.  *See* ECF No. 2 at PageID #: 86.[26]  However, McClafferty told

---

[25]  Portage County Defendants manually filed a flash drive containing Portage County Jail Phone Calls retained by their third-party vendor.  *See* ECF No. 106 at PageID #: 1564.

[26]  A voluntary petition for relief in a case under Title 11 of the United States Code was filed by Plaintiff in the United States Bankruptcy Court for the Northern District of Ohio, being Case No. 15-51397-amk.  Contrary to Plaintiff's assertion in his memorandum in opposition that he "received his bankruptcy discharge in March of 2017," ECF No. 107 at PageID #: 1573, ECF No. 2 at PageID #: 86 and the docket for Case No. 15-51397-amk provide otherwise.  *But see* Plaintiff's Notice of Errata (ECF No. 113) (filed in order to correct an error as to when Plaintiff received his bankruptcy discharge).

In *McClafferty v. Harris*, No. CV-19-921110 (Cuyahoga Cty. Common Pleas Ct. filed Sept. 6, 2019) ("*Six Nails Suit*"), McClafferty, by and through counsel, sued the owners of Six Nails General Contracting LLC claiming that he had an oral contract for a 50% ownership interest in Goodfellas Roofing LLC and Six Nails General Contracting LLC worth more than $1 million.  Defendants flatly denied any such agreement and asserted that McClafferty was judicially estopped from pursuing his false claim because he failed to disclose the claimed interest to the bankruptcy court from which he obtained a discharge in 2017.  McClafferty filed a Notice of Dismissal Pursuant to Civ. R. 41(A) two

(continued...)

(5:19CV2219)

another court that he transferred $655,000 worth of Bitcoins to an asset manager just nine

days before that discharge, *i.e.*, September 12, 2017.  *See* Greentree Complaint (ECF No.

105-20) at PageID #: 1543, ¶¶ 29-30.  (Plaintiff was only earning $5,800 per month in

2017.  *See* ECF No. 2 at PageID #: 82, Section 4. So where did this bankrupt debtor get

226 Bitcoins to transfer to Defendants "at a market value of $2,900 per Bitcoin, for a total

investment of approximately six hundred fifty-five thousand dollars ($655,000)," and

why didn't he disclose those assets to the bankruptcy court?)[27]

---

[26](...continued)
hours after the defendants filed for summary judgment in the *Six Nails Suit*.  The state
court subsequently denied Defendants' Motion for Sanctions.  *See* ECF No. 117-1.
According to the Portage County Defendants, there are commonalities between Plaintiff's
litigation tactics in the *Six Nails Suit* and the case at bar.  *See* ECF No. 105-18.

In an adversary proceeding filed by a creditor, Brian Blakkolb, within
McClafferty's Chapter 7 bankruptcy case, *Blakkolb v. McClafferty*, No. 15-05112-amk
(N.D. Ohio Bkrptcy filed Oct. 2, 2015), McClafferty entered into a settlement agreement
pursuant to which he agreed to pay $3,500 and ensure that Blakkolb's roof was repaired
as originally promised.  After the adversary proceeding was dismissed, McClafferty
reneged on the agreement.  Blakkolb filed a Rule 60(b) Motion for Relief From Judgment
and Reinstate Case on the basis that the dismissal had been fraudulently induced.  *See*
ECF No. 105-19.

[27]  *See McClafferty v. Greentree Equity Partners*, No. 2020CV00011 (Portage
Cty. Common Pleas Ct. filed Jan. 7, 2020) (case in which Plaintiff also proceeded *pro se*).
On February 27, 2020, the court approved Plaintiff's Notice of Dismissal; Notice of
Substantial Compliance and Superseding Contract pursuant to Civ. R. 41(A)(1)(a).  The
Notice provides, in relevant part:  "Defendants have come into substantial compliance
with the September 12th, 2017 Asset Management Agreement, which includes authorizing
the release of funds that are currently being held in escrow." ECF No. 105-21; *see also*
Internet Article Quoting Plaintiff (ECF No. 118-2) at PageID #: 1661-64.  Contrary to
ECF No. 105-21, McClafferty asserts in his memorandum in opposition that "[t]o date,
Plaintiff has not received any monies from the 2017 investment, and there is no guarantee
that Plaintiff ever will." ECF No. 107 at PageID #: 1573.

It is to be noted that Plaintiff also filed a Request to Proceed *in Forma Pauperis* in
this state court action.  McClafferty attested under penalty of perjury that he "lack[ed]
access to [his] finances."  Plaintiff still owes a past due balance of $417.40 for court

(continued...)

(5:19CV2219)

- In a recorded call Plaintiff made while detained in the Portage County Jail, McClafferty told a friend, "Me and [attorney] Ashraf [Abbas] unloaded in like November, December of 2017 while I was being held in this jail, you know, Ashraf is allowed to visit with his phone, you know what I'm saying?  So we were . . . 'cause he's an attorney, so . . . he and I liquidated a ton of Bitcoin from this jail, which will – before it crashed – which will be put into a book one day about how this went down. . . ." ECF No. 105-2 at PageID #: 1423 (*D0d9a87f0 at 13:10- 14:00).  Plaintiff represented to another court that this liquidation occurred on December 15, 2017 – after his bankruptcy discharge.  ECF No. 105-20 at PageID #: 1543, ¶ 33.

- In a call to his mother, Plaintiff told her he is trying to get money released from an escrow account and he doesn't want to talk about it over the phone.  ECF No. 105-2 at PageID #: 1421 (*185-770 at 4:45-5:42).  McClafferty represented to another court that his Bitcoin investment was liquidated and the $1.265 million proceeds were deposited on September 19, 2018 into an escrow account in his favor in the U.S. Virgin Islands.  ECF No. 105-20 at PageID #: 1544, ¶ 37.

- Plaintiff told a friend, "Daddy actually put a lot of money away, okay?  Just . . . I'm gonna be alright, right?"  ECF No. 105-2 at PageID #: 1421 (*190-206 at 6:30).

- When his mother told him that he won't have enough money to fly home from St. Thomas for holidays after leaving prison, Plaintiff said, "Actually am going to have it. . . . There's a lot you don't know, mother.  There's a lot you don't know, trust me."

---

[27](...continued)
costs.

(5:19CV2219)

> Ironically, McClafferty's mother tells him "just don't be doing anything shady, that's all I'm saying."  ECF No. 105-2 at PageID #: 1421 (*187-520 at 13:35-14:30).

- Plaintiff told Austin Frederick to advertise the "anonymous" complaint sent to the OIG on his Facebook page.  He told Frederick, "I don't know if 'G' told you, but I've got a lot of money, man.  I'm not saying that bragadociously, but I made a lotta money in my life, right?  Listen, I have no problem putting $5,000 or $10,000 into a targeted Facebook campaign [to promote the complaint]. . . ."  ECF No. 105-2 at PageID #: 1421 (*167-668 at 4:30-5:10).

- On December 3, 2019, McClafferty bragged to Austin Frederick that his taxpayer complaint was a "very well written complaint.  Very highly intellectual."  He told Frederick that "once it's filed, I'm going to have you start going around and set up meetings with attorneys on the notion that you want to bring them on on an hourly basis, right, on a retainer, because I'll pay $5,000, you know, to have, uh, to have this handled properly because it ends up, you know, benefits me as well. . . ."  ECF No. 105-2 at PageID #: 1421 (*174-540 at 4:18-5:00).

- In a call with Frederick – who was concerned that the state court denied him IFP status in the mandamus action against Sheriff Doak, *see Frederick v. Doak*, No. 2019CV00917 (Portage Cty. Common Pleas Ct. filed Nov. 21, 2019) – McClafferty assured Frederick that he will pay the court costs if he has to because, "That's [$318.10 in court costs] a night at the bar, dude, no big deal."  ECF No. 105-2 at PageID #: 1421 (*168-788 at 6:40).

(5:19CV2219)

- Plaintiff told Boog that he will order $100 in food for the halfway house staff if they will let Boog have the leftovers.  McClafferty said he will tell Briscar to charge it to his AMEX card.  ECF No. 105-2 at PageID #: 1421 (*204-449 at 14:20).

- McClafferty told Boog that he "will love my Escalade dude. . . .  I've got 6 televisions in the fucking Escalade, dude."  ECF No. 105-2 at PageID #: 1421 (*172-694 at 9:15-10:00).

The Court finds that Plaintiff intentionally misrepresented the financial status of himself in his request for permission to proceed *in forma pauperis* (ECF No. 2).  Plaintiff's allegations in *McClafferty v. Greentree Equity Partners*, No. 2020CV00011 (Portage Cty. Common Pleas Ct. filed Jan. 7, 2020) and declaration in the Notice of Dismissal (ECF No. 105-21) (approved by the state court) that "Defendants have come into substantial compliance with the September 12th, 2017 Asset Management Agreement, which includes authorizing the release of funds that are currently being held in escrow" contradict his sworn statements under Section 7 in his IFP Application that he did not have "Other Assets."  Plaintiff's misstatements about his Bitcoin investment supports a determination that his allegation of poverty was blatantly untrue.  Based on the material misrepresentations that Plaintiff made about his financial situation in his request for permission to proceed *in forma pauperis* (ECF No. 2), the Court grants the Portage County Defendants' motion and exercises its discretion to dismiss the Complaint (ECF No. 1) with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(A).  *Ojose v. Youngstown State Univ.*, No. 19-3221, 2019 WL 8301664 (6th Cir. Dec. 18, 2019) (affirming dismissal of action with prejudice given plaintiff's intentional misrepresentations in an IFP Application).

**2.**

(5:19CV2219)

Even if Plaintiff lied to his family, friends and the courts about his own financial condition, a review of the certified copy of McClafferty's prisoner account statement (ECF No. 2-2) leaves no doubt that his parents funded his lifestyle while he was incarcerated (prison fundraisers to purchase fast food; Netflix accounts; iTunes, commissary, phone accounts, copy and mail expenses, etc.).

"The question under 28 U.S.C. § 1915 is whether the litigant is 'unable to pay' the costs, and the answer has consistently depended in part on litigant's actual ability to get funds from a spouse, a parent, an adult sibling, or other next friend." *Williams v. Spencer*, 455 F. Supp. 205, 209 (D.Md. 1978); *see also Fridman v. City of New York*, 195 F. Supp.2d 534, 537 (S.D.N.Y. 2002) ("In assessing an application to proceed in forma pauperis, a court may consider the resources that the applicant has or 'can get' from those who ordinarily provide the applicant with the 'necessities of life,' such as 'from a spouse, parent, adult sibling or other next friend.' ") (quoting *Williams*, 455 F. Supp. at 208-209); *Sellers v. United States*, 881 F.2d 1061, 1063 (11th Cir. 1989) (per curiam) (funds "derived from family sources" are relevant to IFP determination); *Wilson v. Sargent*, 313 F.3d 1315, 1319-20 (11th Cir. 2002) (per curiam) (same).

"Federal Courts have frequently recognized that, for purposes of determining IFP eligibility, it is appropriate to consider any support that an IFP applicant might receive from a spouse, or from any other individual." *Ginters v. Frazier*, Civ. No. 07-4681 (JMR/RLE), 2008 WL 314701, at *2 n.1 (D.Minn. Feb. 4, 2008) (collecting cases); *see also Akkaraju v. Ashcroft*, No. 03 C 6447, 2003 WL 22232969, at *1 (N.D.Ill. Sept. 26, 2003) ("In evaluating the funds available to *in forma pauperis* movants, courts may consider the income or resources of interested persons, such as spouses and parents.").

(5:19CV2219)

In February 2020, Plaintiff's father posted a $5,000 cash bond for McClafferty in *State v. McClafferty*, No. 15C000185 (Geauga Cty. Common Pleas Ct. filed Oct. 22, 2015). *See* ECF No. 105-22.[28] While Plaintiff pleads poverty to the Court, he was heard in recorded prison calls (ECF No. 105-2 at PageID #: 1421) saying he has only to ask his parents for money and he receives it.

• Plaintiff made regular calls to his mom asking her to put anywhere from $10- $100 on his various prison accounts for commissary, Jpay media, copying and mailing expenses, etc. The calls are too numerous to list separately, but McClafferty's prisoner account statement (ECF No. 2-2) shows that money flowed in regularly to Plaintiff's accounts even before he filed the case at bar.

• In a call with his mom, Plaintiff tells her that he received a bill for court costs (in another case). He asks his mom to send the clerk $10/month so the clerk doesn't garnish his inmate account. McClafferty also tells her "Do not give them a buck over $10." ECF No. 105-2 at PageID #: 1421 (*162-731 at 2:15-3:30).

• In a call to Austin Frederick, Plaintiff talked about Briscar not doing what McClafferty needs. Plaintiff needs to know whether $60 will be enough to buy "advertising" for the Change.org petition or whether he needs to send $200. ECF No. 105-2 at PageID #: 1421 (*190-672 at 4:35-6:00).

---

[28] Plaintiff's current address is for a home owned by his parents. *See* Notice of Change of Address (ECF No. 112); Portage County, Ohio Property Records.

(5:19CV2219)

- In a call to Briscar on December 9, 2019, Plaintiff told him that he will have his mom cut a $60 check payable to cash and have her mail it to Briscar, so he can use it to promote the petition on Change.org.  ECF No. 105-2 at PageID #: 1421 (*164-621 at 12:10).

- After telling his mom that he "doesn't have to do the PR thing," Plaintiff told his mom that Briscar is buying 10,000 push notifications to promote the petition on Change.org. McClafferty told his mom that the cost is $100 and he promised Briscar he'd pay half. Plaintiff's mom is reluctant to send Briscar the money, but McClafferty urges, "If this results in a 6-figure settlement because of the pressure that's being applied, it'll all be worth it, okay."  ECF No. 105-2 at PageID #: 1421 (*159-183 at 4:00- 8:30).

This evidence shows Plaintiff had at his disposal more than enough money to have paid the $350 filing fee for the case at bar.  For this reason, and particularly in light of his frivolous and harassing claims, the Court dismisses this action with prejudice.  *Atkinson v. Muskingum Cty. Commissioners*, No. 2:19-CV-2562, 2020 WL 886217 (S.D. Ohio Feb. 24, 2020) (dismissing plaintiff's complaint without prejudice because he failed to disclose ownership of real property and that he received $200 per month from his parents).

## XVII.

Coleman and Dr. Welsh move the Court for an Order dismissing Plaintiff's claims against them with prejudice as a sanction and to designate McClafferty as a vexatious litigator. These Defendants join in the Portage County Defendants' Motion for Sanctions of Dismissal, Attorney Fees and Costs, Injunctive Relief, and to Declare Plaintiff a Vexatious Litigator (ECF No. 105).  Coleman and Dr. Welsh also argue that Ohio Rev. Code § 2323.52, entitled "Civil

(5:19CV2219)

action to declare person vexatious litigator" is applicable to the state law claims asserted against them.

Coleman and Dr. Welsh submitted their First Set of Interrogatories and Request for Production of Documents to Plaintiff on October 30, 2020, requesting responses no later than November 30, 2020.  *See* Notice of Propounding (ECF No. 103).  Plaintiff did not respond to the requests.  In a good faith effort to attempt to obtain responses, counsel for Coleman and Dr. Welsh sent a letter to Plaintiff on December 9, 2020 reminding the Plaintiff of his duty to respond and requesting prompt responses.  *See* ECF No. 108-1.  Plaintiff still did not respond to the requests for written discovery.  Accordingly, Coleman and Dr. Welsh request pursuant to Fed. R. Civ. P. 37(d) that the Court strike all pleadings directed against them thereby dismissing these Defendants.  This request is not well-taken because Plaintiff never received the requests for written discovery, notice or the reminder.  *See* ECF No. 114 at PageID #: 1638.

## XVIII.

Plaintiff's Motion for Enlargement of Time to Conduct Discovery (ECF No. 109), received for filing on January 4, 2021, requests "an enlargement of all discovery deadlines by no less than one hundred and eighty (180) days."  ECF No. 109-3 at PageID #: 1667.  The fact discovery cutoff date was December 9, 2020.  *See* Case Management Plan (ECF No. 26), entered on May 20, 2020, at PageID #: 357, ¶ 4.

After considering the factors set forth in *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010), the Court denies the motion.

(5:19CV2219)

## IX.

For the reasons set forth above,

Portage County Defendants' Motion for Partial Judgment on the Pleadings (ECF No. 19) is denied without prejudice.

Plaintiff's Motion for Order to Preserve Evidence (ECF No. 46) is denied.

Plaintiff's Emergency Motion to Reconsider; Request for Court to Enter Findings of Fact and Conclusions of Law (ECF No. 48) is denied.

Portage County Defendants' Motion to Quash Subpoena to Portage County (ECF No. 52) is granted.

Portage County Defendants' Motion to Strike Plaintiff's Request for Reciprocal Discovery (ECF No. 58) is granted.  ECF No. 56 is stricken from the file.

Portage County Defendants' Motion to Compel Plaintiff to Respond to Interrogatories (ECF No. 60) is denied without prejudice.

Coleman and Dr. Welsh's Motion for Judgment on the Pleadings (ECF No. 66) is denied without prejudice.

Portage County Defendants' Motions for Protective Order and to Strike (ECF No. 69) are granted.  ECF No. 65 is stricken from the file and Plaintiff is ordered not to communicate directly with represented parties.

Portage County Defendants' Motion for Order Permitting LaECI to Release Additional Inmate Phone Calls (ECF No. 71) is denied without prejudice.

Plaintiff's Motion for Leave to File Surreply (ECF No. 75) is granted.

(5:19CV2219)

Plaintiff's Request for Order Authorizing Clerk to Execute Previously Filed Subpoena and to Effectuate Service (ECF No. 78) is denied.

Plaintiff's Motion *in Limine* Requesting That This Court, on Judicial Estoppel Grounds, Prohibit County Defendants From Taking Positions Inconsistent With Video Evidence Provided to the Court by County Defendants (ECF No. 90) is denied.

Defendants Germani, Burns and Morganstern's Motion for Protective Order Pertaining to Plaintiff's Requests for Admission (ECF No. 99) is granted.

Defendants' Joint Motion for Status Conference (ECF No. 102) is denied as moot.

Portage County Defendants' Motion for Sanctions of Dismissal, Attorney Fees and Costs, Injunctive Relief, and to Declare Plaintiff a Vexatious Litigator (ECF No. 105) is granted in part and denied in part for the reasons set forth in Section XVI, *supra*.

Coleman and Dr. Welsh's Motion for Sanctions of Dismissal and Designation of Plaintiff as a Vexatious Litigator (ECF No. 108) is granted in part and denied in part for the reasons set forth in Sections XVI and XVII, *supra*.

Plaintiff's Motion for Enlargement of Time to Conduct Discovery (ECF No. 109) is denied.


IT IS SO ORDERED.


 March 30, 2021                           /s/ Benita Y. Pearson
Date                                     Benita Y. Pearson
                                         United States District Judge